ORIGINAL

1    LAURA E. DUFFY
     United States Attorney
2    TARA K. McGRATH
     FRED SHEPPARD
3    Assistant United States Attorneys
     Federal Office Building
4    880 Front Street, Room 6293
     San Diego, California 92101-8893
5    Telephone: (619) 557-7176

6    Attorneys for Plaintiff
     United States of America

7

```
                          FILED
                        JAN 27 2012
                  CLERK U.S. DISTRICT COURT
                SOUTHERN DISTRICT OF CALIFORNIA
                BY _____ DEPUTY
```

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11

12   IN THE MATTER OF A MOTION BY      )    Crim. Case No. 11MC0242
     THE UNITED STATES FOR AN       )
13   ORDER AUTHORIZING THE WAIVER   )
     OF   DISCLOSURE   REQUIREMENT)
14   PURSUANT TO TITLE 18,          )    GOVERNMENT'S MOTION FOR
     UNTIED STATES CODE, SECTION 2518(9)   WAIVER OF DISCLOSURE
15                             )    REQUIREMENT AND ORDER
                            )    THEREON
16                             )

17         COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

18 Laura E. Duffy, United States Attorney, and Tara K. McGrath, Assistant United States Attorney,

19 and hereby moves this Court for an order waiving the ten-day notice requirement set forth in Title

20 18, United States Code, Section 2518(9). In support of that request, the Government states as

21 follows:

22         1.      Between February 2011 and November 2011, this Court signed orders authorizing

23 the interception of wire communications to and from cellular telephone numbers in 35 phone lines.

24 These applications involved numerous subjects and included multiple orders under case number

25 11MC0242. Intercepted calls produced over 100,000 pages of line sheets and scores of hours of

26 audio recordings.

27 //

28 //

2.      The intercepted communications pertained to criminal activities involving the defendants listed in the attached indictments, including:

| | |
|---|---|
| U.S. v. Rudy Espudo, et all | 12CR0236-IEG |
| U.S. v. Luis Blanco | 12CR0237-IEG |
| U.S. v. Ricardo Marta | 12CR0238-IEG |
| U.S. v. Juan Rodriguez | 12CR0239-IEG |
| U.S. v. Antonio Herrera | 12CR0240-IEG |
| U.S. v. Jose Chavez, et all | 12CR0241-IEG |
| U.S. v Victor Ruiz, et all | 12CR242-IEG |
| U.S. v Francis Ted Morales | 12CR0243-JM |

2.      Many of the defendants named in these indictments were arrested on January 25, 2012 within the Southern District of California. Detention hearings are currently scheduled before Magistrate courts in the coming weeks.  Disclosure of the aforementioned wire intercepts have been produced in the public record, but the voluminous related discovery has not yet been produced.

3.      Title 18, United States Code, Section 2518(9) provides:

The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved.  This ten day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

4.      Given the voluminous nature of the pleadings, the Government has been and will continue to act with diligence and reasonable speed in making the pleadings pertaining to the wire intercepts available, where appropriate, to defense counsels for the defendants listed in the attached indictments.  Nevertheless, the orders and applications cannot be made available ten days before the currently scheduled detention hearings.

1        5.    The defendants will not be prejudiced by waiver of the ten-day notice requirement.

2    The purpose of the ten-day notice requirement is to provide the defendant with an opportunity to

3    review the documents and determine whether the statutory requirements of Title 18, United States

4    Code, Section 2510, et. seq. ("Title III") have been met.  It is well-established, however, that

5    evidence obtained by electronic surveillance is admissible at a detention hearing even if the

6    defendant challenges the legality of the manner in which it was obtained.  Moreover, the

7    Government will be requesting that the Court's pretrial detention orders, if issued, be entered

8    without prejudice to the defendants.  Thus, the defendants will not be prejudiced by the Court's

9    waiver of the ten day notice requirement.

10        Based on the foregoing, the Government respectfully requests that the Court issue an Order,

11    pursuant to Title 18, United States Code, Section 2518(9), waiving the ten-day notice requirement.

12        DATED: January 27, 2012.

13              Respectfully submitted,

14

15              LAURA E. DUFFY
          United States Attorney

16

17              TARA K. McGRATH
          Assistant U.S. Attorney

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27

28                        3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ORDER

Upon motion of the United States of America, and pursuant to Title 18, United States Code, Section 2518(9), the Court hereby ORDERS that the ten-day notification requirement is waived. This Order is based upon the Court's findings: (1) that it was not feasible for the Government to comply with the notice requirements set forth in Section 2518(9); and (2) that the defendants referenced in the indictments attached to the related application will not be prejudiced by the entry of this Order.

Dated this **21** day of January, 2012.

HON. LARRY ALAN BURNS
United States District Court
Southern District of California

4

```
                                    ┌─────────────────────────┐
                                    │        FILED            │
                                    │  ┌───────────────────┐  │
1                                   │  │    JAN 1 9 2012    │  │
                                    │  └───────────────────┘  │
2                                   │  CLERK US DISTRICT COURT │
                                    │ SOUTHERN DISTRICT OF     │
3                                   │ CALIFORNIA               │
                                    │ BY  ᴸᵍᵇ         DEPUTY   │
4                                   └─────────────────────────┘
```

5

6                    UNITED STATES DISTRICT COURT

7                  SOUTHERN DISTRICT OF CALIFORNIA

8                      June 2011 Grand Jury

9   UNITED STATES OF AMERICA,    )   Case No. **'12 CR 0237 IEG**

10                 Plaintiff,    )   I N D I C T M E N T

11       v.                      )   Title 21, U.S.C., Sec. 841(a)(1) –
                                 )   Distribution of Heroin
12   LUIS BLANCO,                )

13                 Defendant.    )

14   ─────────────────────────────)

15       The grand jury charges:

16                          Count 1

17       On or about April 26, 2011, within the Southern District of

18   California, defendant LUIS BLANCO did knowingly and intentionally

19   distribute approximately 2.9 grams of heroin, a Schedule I Controlled

20   Substance; in violation of Title 21, United States Code,

21   Section 841(a)(1).

22   //

23   //

24   //

25   //

26   //

27   //

28   //

FAS:nlv:San Diego
1/18/12

## Count 2

On or about April 27, 2011, within the Southern District of California, defendant LUIS BLANCO did knowingly and intentionally distribute approximately 2.8 grams of heroin, a Schedule I Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

DATE: January 19, 2012.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
     FRED SHEPPARD
     Assistant U.S. Attorney

By: _____
     TARA K. McGRATH
     Assistant U.S. Attorney

2

FILED

JAN 19 2012

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. '12 CR 0238 JEG |
| Plaintiff, ) | I N D I C T M E N T |
| v. ) | Title 21, U.S.C., Sec. 841(a)(1) - Possession of Heroin with Intent to Distribute |
| RICARDO MARTA, ) | |
| Defendant. ) | |

The grand jury charges:

On or about March 5, 2011, within the Southern District of California, defendant RICARDO MARTA, did knowingly and intentionally possess, with the intent to distribute, approximately 7.7 grams of heroin, a Schedule I Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

DATE: January 19, 2012.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
    FRED SHEPPARD
    Assistant U.S. Attorney

FAS:nlv:San Diego
1/18/12

```
        FILED

        JAN 1 9 2012

      CLERK US DISTRICT COURT
  SOUTHERN DISTRICT OF CALIFORNIA
  BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. '12 CR 02 39 IEG |
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | Title 21, U.S.C., Sec. 841(a)(1) - Possession of Cocaine |
| JUAN JESUS RODRIGUEZ, aka "Bugsy," | ) | with Intent to Distribute |
| Defendant. | ) | |

The grand jury charges:

On or about May 29, 2011, within the Southern District of California, defendant JUAN JESUS RODRIGUEZ, aka "Bugsy," did knowingly and intentionally possess, with the intent to distribute, approximately 27 grams of cocaine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

DATE: January 19, 2012.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
     TARA K. McGRATH
     Assistant U.S. Attorney

TKM:nlv:San Diego
1/18/12

FILED

JAN 19 2012

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. '12 CR 0240 IEG |
| Plaintiff, | I N D I C T M E N T |
| v. | Title 21, U.S.C., Secs. 841(a)(1) and 846 - Conspiracy to Distribute Methamphetamine |
| ANTONIO MORAN HERRERA, | |
| Defendant. | |

The grand jury charges:

Beginning at a date unknown to the grand jury and continuing up to and including May 6, 2011, within the Southern District of California, and elsewhere, defendant ANTONIO MORAN HERRERA knowingly and intentionally conspired with other persons known and unknown to the grand jury to distribute 50 grams and more of methamphetamine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

DATE: January 19, 2012.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
     FRED SHEPPARD
     Assistant U.S. Attorney

FAS:nlv:San Diego
1/18/12

FILED

JAN 19 2012

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. '12 CR 02 41 IEG |
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | Title 21, U.S.C., Secs. 841(a)(1) and 846 - Conspiracy to Distribute Heroin and Marijuana; Title 21, U.S.C., Sec. 841 - Possession of Heroin and Marijuana with Intent to Distribute |
| JOSE MARIANO CHAVEZ (1), aka "Pelucas," RAFAEL GARCIA, JR. (2), aka "Vampy," MICHELLE PATRICIA RUIZ (3), | ) | |
| Defendants. | ) | |

The grand jury charges:

Count 1

Beginning at a date unknown to the grand jury and continuing up to and including May 21, 2011, within the Southern District of California, and elsewhere, defendants JOSE MARIANO CHAVEZ, aka "Pelucas," RAFAEL GARCIA, JR., aka "Vampy," and MICHELLE PATRICIA RUIZ, knowingly and intentionally conspired together and with each other and with other persons known and unknown to the grand jury to distribute controlled substances, to wit: heroin and marijuana, Schedule I Controlled Substances; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

FAS:nlv:San Diego
1/18/12

1

### Count 2

2   On or about May 21, 2011, within the Southern District of
3 California, defendant MICHELLE PATRICIA RUIZ, did knowingly and
4 intentionally possess, with the intent to distribute, approximately
5 20.3 grams of heroin, Schedule I Controlled Substances; in violation
6 of Title 21, United States Code, Section 841(a)(1).

7

### Count 3

8   On or about May 21, 2011, within the Southern District of
9 California, defendant MICHELLE PATRICIA RUIZ, did knowingly and
10 intentionally possess, with the intent to distribute, approximately
11 10.8 grams of marijuana, Schedule I Controlled Substances; in
12 violation of Title 21, United States Code, Section 841(a)(1).

13   DATE: January 19, 2012.

14                                           A TRUE BILL:

15

16                                  _____
                                           Foreperson

17 LAURA E. DUFFY
   United States Attorney
18

19 By: _____
         TARA K. McGRATH
20       Assistant U.S. Attorney

21

22

23

24

25

26

27

28

2

FILED

JAN 1 9 2012

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

10   UNITED STATES OF AMERICA,           )   Case No. **'12 CR 0242 IEG**
                                         )
11                    Plaintiff,         )   I N D I C T M E N T
                                         )
12        v.                             )   Title 21, U.S.C., Secs. 841(a)(1)
                                         )   and 846 - Conspiracy to Distribute
13   VICTOR FRANCISCO RUIZ (1),          )   Methamphetamine; Title 21, U.S.C.,
          aka "Lil Jawbreaker,"          )   Sec. 841(a)(1) - Distribution of
14   CONCEPCION RAMIREZ (2),             )   Methamphetamine; Title 21, U.S.C.,
     DEBORAH SUE ALLEN (3),              )   Sec. 841(a)(1) - Possession of
15                                       )   Methamphetamine with Intent to
                      Defendants.        )   Distribute; Title 18, U.S.C.,
16   _____     )   Sec. 2 -- Aiding and Abetting

17        The grand jury charges:

18                               Count 1

19        Beginning at a date unknown to the grand jury and continuing up

20   to and including November 16, 2011, within the Southern District of

21   California, and elsewhere, defendants VICTOR FRANCISCO RUIZ, aka "Lil

22   Jawbreaker, CONCEPCION RAMIREZ and DEBORAH SUE ALLEN knowingly and

23   intentionally conspired together and with each other and with other

24   persons known and unknown to the grand jury to distribute a controlled

25   substance, to wit: approximately 3.3 grams of methamphetamine,

26   Schedule II Controlled Substances; in violation of Title 21, United

27   States Code, Sections 841(a)(1) and 846.

28   //

TKM:nlv(1):San Diego
1/19/12

## Count 2

On or about November 16, 2011, within the Southern District of California, defendant DEBORAH SUE ALLEN did knowingly and intentionally distribute approximately 3.3 grams of methamphetamine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

## Count 3

On or about November 16, 2011, within the Southern District of California, defendants VICTOR FRANCISCO RUIZ, aka "Lil Jawbreaker, and CONCEPCION RAMIREZ, did knowingly and intentionally possess, with the intent to distribute, approximately 3.3 grams of methamphetamine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

DATE: January 19, 2012.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
      TARA K. McGRATH
      Assistant U.S. Attorney

2

# SEALED

FILED

JAN 1 9 2012

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY



## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. **12 CR 0236** EG |
| Plaintiff, | **I N D I C T M E N T** |
| v. | Title 18, U.S.C., Sec. 1962(d) - Conspiracy to Conduct Enterprise Affairs Through A Pattern of Racketeering Activity; Title 18, U.S.C., Sec. 1963 - Criminal Forfeiture |

RUDY ESPUDO (1),
    aka Crazy,
ANGELINA CHAVEZ-ESPUDO (2),
    aka Angel,
    aka Senora,
PABLO FRANCO (3),
    aka Casper,
    aka Dwarf,
MIGUEL GRADO (4),
    aka Kieto,
    aka Kathy,
JESUS BARRAGAN (5),
    aka Chito,
FRANCISCO GUTIERREZ (6),
    aka Bullet,
    aka Ammo,
OSCAR LARA (7),
    aka Little Troubles,
ADAN LANDEROS (8),
    aka Lucky,
EDUARDO SANCHEZ (9),
    aka Ghetto,
    aka Eric,
IVAN DUNAYEVICH (10),
    aka Wolfie,
JOSE ARANDA (11),
    aka Vicious,
JULIO SOLORZANO (12),
    aka Mowgli,
GREGORIO PUEBLA (13),
    aka Froggy,
    aka Lil Froggy,
HECTOR FERNANDEZ (14),
    aka Evil,

FAS:TMK:nlv:San Diego
1/19/12



```
 1   ARTHUR GARCIA (15),                     )
          aka Thumper,                       )
 2   JOSE CORNEJO (16),                      )
          aka Rabbit,                        )
 3   JESSY MORENO (17),                      )
          aka Little Monkey,                 )
 4   GERARDO BARAJAS (18),                   )
          aka Knuckles,                      )
 5   ENRIQUE TORRES (19),                    )
          aka Clumsy,                        )
 6        aka Klumsy,                        )
     HECTOR GARCIA (20),                     )
 7        aka Studders,                      )
          aka Muffin,                        )
 8   JOSE ORTEGA (21),                       )
          aka Temper,                        )
 9   JUAN PEREZ (22),                        )
          aka Johnny,                        )
10   GUSTAVO BARRON (23),                    )
          aka Force,                         )
11   ARMANDO BARRAGAN (24),                  )
          aka Bart,                          )
12   ELVIRA ESPARZA (25),                    )
          aka Vida,                          )
13   FRANCISCO ZAMORA (26),                  )
          aka Tiny,                          )
14        aka Frankie,                       )
     EVERST CRUZ (27),                       )
15        aka Temper,                        )
     DANIEL NIETO (28),                      )
16        aka Malo,                          )
     FERNANDO CARAPIA (29),                  )
17        aka Youngster,                     )
     CESAR FLORES (30),                      )
18        aka Thumper,                       )
     ERIK LUPERCIO (31),                     )
19        aka Scrappy,                       )
     JEREMIAH FIGUEROA (32),                 )
20        aka Gremlin,                       )
     JUANA ARAIZA (33),                      )
21   JANETTE HERNANDEZ (34),                 )
          aka Puzzles,                       )
22   ULICES LOPEZ (35),                      )
          aka Tony,                          )
23   TAMMARRA RIVERA (36),                   )
          aka  Tammarra Basulto,             )
24        aka Tammy,                         )
     TONY GARCIA (37),                       )
25        aka Whopper,                       )
     CYNTHIA VARELA (38),                    )
26        aka Cindy,                         )
     SARAH QUINTANA (39),                    )
27   MARCELINA REYNOSO (40),                 )
          aka Marcy,                         )
28                                           )
     _____        )
                    Defendants.             )
```

1     The grand jury charges:

2                **Count 1**

3              **THE ENTERPRISE**

4     1.   At various times material to this indictment:

5         a.  Defendants RUDY ESPUDO, aka Crazy, ANGELINA CHAVEZ-

6 ESPUDO, aka Angel, aka Senora, PABLO FRANCO, aka Casper, aka Dwarf,

7 MIGUEL GRADO, aka Kieto, aka Kathy, JESUS BARRAGAN, aka Chito,

8 FRANCISCO GUTIERREZ, aka Bullet, aka Ammo, OSCAR LARA, aka Little

9 Troubles, ADAN LANDEROS, aka Lucky, EDUARDO SANCHEZ, aka Ghetto, aka

10 Eric, IVAN DUNAYEVICH, aka Wolfie, JOSE ARANDA, aka Vicious, JULIO

11 SOLORZANO, aka Mowgli, GREGORIO PUEBLA, aka Froggy, aka Lil Froggy,

12 HECTOR FERNANDEZ, aka Evil, ARTHUR GARCIA, aka Thumper, JOSE CORNEJO,

13 aka Rabbit, JESSY MORENO, aka Little Monkey, GERARDO BARAJAS, aka

14 Knuckles, ENRIQUE TORRES, aka Clumsy, aka Klumsy, HECTOR GARCIA, aka

15 Studders, aka Muffin, JOSE ORTEGA, aka Temper, JUAN PEREZ, aka Johnny,

16 GUSTAVO BARRON, aka Force, ARMANDO BARRAGAN, aka Bart, ELVIRA ESPARZA,

17 aka Vida, FRANCISCO ZAMORA, aka Tiny, aka Frankie, EVERST CRUZ, aka

18 Temper, DANIEL NIETO, aka Malo, FERNANDO CARAPIA, aka Youngster, CESAR

19 FLORES, aka Thumper, ERIK LUPERCIO, aka Scrappy, JEREMIAH FIGUEROA,

20 aka Gremlin, JUANA ARAIZA, JANETTE HERNANDEZ, aka Puzzles, ULICES

21 LOPEZ, aka Tony, TAMMARRA RIVERA, aka Tammarra Basulto, aka Tammy,

22 TONY GARCIA, aka Whopper, CYNTHIA VARELA, aka Cindy, SARAH QUINTANA,

23 MARCELINA REYNOSO, aka Marcy (collectively "Defendants"), and others

24 known and unknown, were members and associates of an organization

25 known as the "Mexican Mafia," whose members engaged in, among other

26 things, attempted murder, kidnaping, robbery, extortion, conspiracy

27 to distribute controlled substances, distribution of controlled

28 substances, possession with intent to distribute controlled substances

1  and conspiracy to launder the proceeds of illegal activities. At all

2  relevant times, this organization, known as the "Mexican Mafia" or "La

3  Eme," operated within the Southern District of California and

4  elsewhere. The Mexican Mafia, including its leadership, members and

5  associates constitute an "Enterprise," as defined by Title 18, United

6  States Code, Section 1961(4) (hereinafter "the Enterprise"), that is,

7  a group of individuals associated in fact. The Enterprise constitutes

8  an ongoing organization whose members function as a continuing unit

9  for the common purpose of achieving the objectives of the Enterprise.

10 The Enterprise is engaged in, and its activities affected, interstate

11 and foreign commerce.

### BACKGROUND ON THE MEXICAN MAFIA

13     2.   The Mexican Mafia is a powerful gang which controls drug

14 distribution and other illegal activities within portions of both the

15 California and Federal penal systems, and which has increasingly

16 worked to expand its influence over illegal activities outside of

17 those prison systems.

18     3.   When Mexican Mafia members or associates serve their

19 sentences and rejoin their communities, they remain loyal to the

20 Mexican Mafia and work to further the goals of the Mexican Mafia

21 outside the prison environment. A member of the Mexican Mafia is

22 referred to as "brother," "carnal," "don" or "big homie." A high-

23 level associate of the Mexican Mafia is referred to as a "camarada."

24     4.   The Mexican Mafia enforces its rules and promotes discipline

25 among its members and associates by assaulting and threatening those

26 individuals, including associates, who violate the rules or pose a

27 threat to the Enterprise.

28 //

4

5.   The Mexican Mafia exerts control and organizes Hispanic street gangs into a larger, Mexican Mafia-controlled, criminal organization.  Significant goals of the Mexican Mafia are to control and profit from narcotics trafficking in Southern California.

6.   The Mexican Mafia requires street gangs to pay a "tribute" or a "tax" (hereinafter referred to as "tax") on a regular basis.  Tax payments are made in cash, narcotics and other tangible property.  If a gang pays the tax, the Mexican Mafia permits gang members to exert influence over, and to traffic in, narcotics in their neighborhoods and territories.  If a gang fails to pay the tax (or otherwise fails to comply with the dictates of the Mexican Mafia), the Mexican Mafia will place a "green light" on the members of the gang, which authorizes Mexican Mafia members and associates, as well as rival gangs, to assault and/or murder members of the gang, both in the community and within the penal system, until the gang pays the tax.  Hispanic gang members from Southern California are commonly referred to as Surenos and work under the authority and control of the Mexican Mafia hierarchy in the collection of tax from drug dealers and criminals operating in their respective territories.  Sureno gang members also "kick up" a portion of the profits from their own criminal ventures, including robbery and drug dealing, to the hierarchy, including the shot callers of their respective gangs and other Enterprise members.

7.   In addition to intimidation through direct assaults, the Mexican Mafia is able to assert control and influence over gang members outside the penal system because: (1) the gang members do not want their incarcerated members to be assaulted, and (2) the gang

5

members want protection provided by the Mexican Mafia if they ever become incarcerated.

8.   The Mexican Mafia also exercises control over non-gang affiliated narcotics dealers by taxing them, either directly by a Mexican Mafia member, such as defendant RUDY ESPUDO, or a gang answering to the Mexican Mafia, such as the Diablos, West Side, Varrio Fallbrook Locos or Varrio San Marcos gangs.  If they pay taxes, drug dealers are permitted to sell illegal drugs in their designated areas. If a drug dealer fails to pay the required tax either directly to a Mexican Mafia member or to a gang collecting tax under the authority of a Mexican Mafia member, the drug dealer may be assaulted or robbed of his/her drugs, money, and/or possessions.

9.   Members, associates and affiliates of the Mexican Mafia routinely use mail drops to communicate with each other.  These mail drops will allow either inmates or individuals acting on the behalf of inmates to send both correspondence and/or tax money to a Mexican Mafia associate outside of the jail or prison.  The correspondence or tax money is then delivered as necessary.  Additionally, incarcerated Mexican Mafia members and associates know that their mail is routinely reviewed by prison authorities, particularly when the mail is addressed to other known Mexican Mafia members and/or associates.  As such, Mexican members and/or associates will also address mail to one individual that will contain coded language indicating that is should be delivered or related to an associate.  Both in their written correspondence and discussions, Mexican Mafia members and/or associates often communicate using coded language and hand signals in order to thwart law-enforcement efforts to monitor their illegal activities.

6

10.   Additionally, female companions of validated members of the Mexican Mafia are commonly referred to as Senoras and are often involved in the day-to-day operations of the Mexican Mafia.   Such participation includes the passing of orders and information to and from a member to associates as well as receiving money and drugs on their behalf.  Moreover, various non-gang members of the Mexican Mafia facilitate its operations and are commonly referred to as facilitators.   These individuals, while not members of the Mexican Mafia hierarchy or the gangs operating on the street with its authority, are essential to its continued operation.   Often, these individuals will pass information and orders from one associate to another within the organization in order to avoid known associates being observed together.   The same is true for the passing of tax money from one associate to another, where the tax money would first be passed to one or more facilitators who would then transmit the money as directed in order to further the purpose of the Mexican Mafia.

### PURPOSE OF THE ENTERPRISE

11.   The members of the Mexican Mafia and their associates constitute a criminal enterprise, referred to below as the "Mexican Mafia," the "Mexican Mafia criminal enterprise," or the "Enterprise." The word "member" below refers to a full member of the Mexican Mafia. Individuals who are affiliated with the Mexican Mafia and who assist the members are known as "associates" of the Mexican Mafia.   Both members of the Mexican Mafia and their associates are participants in the Enterprise.

12.   The purposes of the Enterprise include, but are not limited to, the following:

7

a.     Enriching Enterprise members and associates through, among other things, the collection of taxes from narcotics traffickers and street gangs.

b.     Controlling illegal activities such as narcotics trafficking and extortion inside California prisons and jails.

c.     Controlling the activities of street gangs throughout Southern California.

d.     Preserving, protecting and expanding the power of the Mexican Mafia through the use of intimidation, violence, threats of violence and assaults.

e.     Promoting and enhancing the Mexican Mafia and the activities of its members and associates.

## THE MEANS AND METHODS OF THE ENTERPRISE

13.   Among the means and methods by which the defendants and their co-racketeers conduct and participate in the conduct of the affairs of the Mexican Mafia criminal enterprise are the following:

a.   The Enterprise commits, attempts and threatens to commit, acts of violence, including murder and assault, to protect and expand the Enterprise's criminal operations.

b.     The Enterprise promotes a climate of fear through violence and threats of violence.

c.     The Enterprise promulgates certain rules to be followed by all participants in the Mexican Mafia criminal enterprise including the rule that a participant in the Enterprise not act as an informant to law enforcement authorities regarding the activities of the Enterprise.

d.     To enforce the rules of the Enterprise and to promote discipline, members and associates of the Enterprise attempt to

8

1  murder, assault, rob and threaten those participants in the Enterprise

2  and others who violate the rules or pose a threat to the Enterprise.

3     e. To generate income, participants in the Enterprise are

4  entitled to conduct, and, in fact, conduct illegal activities under

5  the protection of the Enterprise.

6     f. To generate income, participants in the Enterprise

7  engage in the trafficking of controlled substances.

8     g. To generate income, participants in the Enterprise

9  collect taxes from gangs and drug dealers.

10     h. To generate income, participants in the Enterprise

11  commit robberies.

12     i. To perpetuate the Enterprise, participants attempt to

13  conceal from law enforcement the existence of the Mexican Mafia, the

14  identity of its participants, the ways in which it conducts its

15  affairs and the locations at which it discusses and conducts its

16  affairs.

17         **ROLES OF THE DEFENDANTS**

18    14. At various times material to this Indictment, the defendants

19  had the following roles in the Enterprise:

20     a. Defendant RUDY ESPUDO is a validated member of the

21  Mexican Mafia who oversees Mexican Mafia activities throughout much

22  of northern San Diego county.  As a validated member of the Mexican

23  Mafia, defendant ESPUDO has the right to sanction the murder and/or

24  assault of associates of the Mexican Mafia, and others, including

25  Hispanic gang members both in and out of the prison system.  As a

26  validated member of the Mexican Mafia, defendant ESPUDO is entitled

27  to receive a portion of "taxes" collected under the authority of the

28  Mexican Mafia, as well as proceeds from the sale of narcotics within

1   the geographic areas controlled by the Mexican Mafia.   Prior to
2   becoming a validated member of the Mexican Mafia, ESPUDO was a member
3   of the Diablos, a gang based in Escondido, California.

4        b.   Defendant ANGELINA CHAVEZ-ESPUDO is the wife of
5   defendant RUDY ESPUDO and coordinates ESPUDO's business when he is
6   incarcerated.   As far as Mexican Mafia associates and facilitators are
7   concerned, CHAVEZ-ESPUDO, also referred to as "senora," speaks for
8   ESPUDO and her directions are considered as if he were speaking them.
9   CHAVEZ-ESPUDO collects tax money and drugs on their behalf and passes
10  both information between ESPUDO and his associates as well as orders
11  ESPUDO may direct.

12       c.   Defendant PABLO FRANCO is a high-level associate, also
13  referred to as a "camarada," of the Mexican Mafia who is responsible
14  for coordinating Mexican Mafia activities throughout San Diego County.
15  As a high-level associate of the Mexican Mafia, FRANCO has
16  responsibility over the distribution of narcotics and the "taxation"
17  of individuals operating within the geographic areas controlled by the
18  Mexican Mafia.   FRANCO is responsible for ensuring that a portion of
19  the "taxes" or proceeds collected in the name of the Mexican Mafia are
20  sent to Mexican Mafia members, a practice known as "taking care of,"
21  "kicking up," "paying respects."   Defendant FRANCO also has the
22  authority to participate in, and order, the assault of individuals who
23  act contrary to the goals of the Mexican Mafia.   At all times relevant
24  to this indictment, FRANCO has been incarcerated at R.J. Donovan
25  Prison, a California Department of Corrections and Rehabilitation
26  facility.

27       d.   Defendant MIGUEL GRADO is the "shot caller" or leader
28  of the Diablos gang, which means that he is responsible for the

10

1  collection of taxes on behalf of the Diablos gang under the authority
2  of the Mexican Mafia, as well as ensuring that a portion of those
3  taxes are directed to a Mexican Mafia member.  Tax money is generated
4  by various means, including the sale of drugs by Diablos gang members
5  and the collection of taxes from drug dealers operating within Diablos
6  gang territory.  Defendant ADAN LANDEROS was the "shot caller" for the
7  Diablos gang prior to GRADO, and had the same responsibilities as
8  GRADO.

9       e.  Defendant JESUS BARRAGAN was the "shot caller" or
10 leader of the West Side gang, which means that he was responsible for
11 the collection of taxes on behalf of the West Side gang under the
12 authority of the Mexican Mafia, as well as ensuring that a portion of
13 those taxes were directed to a Mexican Mafia member.  Tax money is
14 generated by various means, including the sale of drugs by West Side
15 gang members and the collection of taxes from drug dealers operating
16 within West Side gang territory.  Defendant EDUARDO SANCHEZ became the
17 "shot caller" for the West Side gang after BARRAGAN was arrested in
18 July 2011, and had the same responsibilities as BARRAGAN until his own
19 arrest in September 2011.

20      f.  Defendant OSCAR LARA is the "shot caller" or leader of
21 the Varrio San Marcos gang, which means that he is responsible for the
22 collection of taxes on behalf of the Varrio San Marcos gang under the
23 authority of the Mexican Mafia, as well as ensuring that a portion of
24 those taxes are directed to a Mexican Mafia member.  Tax money is
25 generated by various means, including the sale of drugs by Varrio
26 San Marcos gang members and the collection of taxes from drug dealers
27 operating within Varrio San Marcos gang territory.  Defendant IVAN
28

1  DUNAYEVICH was the "shot caller" for the Varrio San Marcos gang prior
2  to LARA, and had the same responsibilities as LARA.

3        g.    Defendant FRANCISCO GUTIERREZ is the "shot caller" or
4  leader of the Varrio Fallbrook Locos gang, which means that he is
5  responsible for the collection of taxes on behalf of the Varrio
6  Fallbrook Locos gang under the authority of the Mexican Mafia, as well
7  as ensuring that a portion of those taxes are directed to a Mexican
8  Mafia member.  Tax money provided by the Varrio Fallbrook Locos gang
9  is generated primarily by the sale of drugs inside the Vista Detention
10  Facility and the collection of taxes from inmates within that
11  facility.

12        h.    Defendants JOSE ARANDA, JULIO SOLORZANO, GREGORIO
13  PUEBLA, HECTOR FERNANDEZ, ARTHUR GARCIA, JOSE CORNEJO, JESSY MORENO,
14  GERARDO BARAJAS, ENRIQUE TORRES, HECTOR GARCIA, JOSE ORTEGA, JUAN
15  PEREZ, GUSTAVO BARRON, ARMANDO BARRAGAN, ELVIRA ESPARZA, FRANCISCO
16  ZAMORA, EVERST CRUZ, DANIEL NIETO, FERNANDO CARAPIA, CESAR FLORES,
17  ERIK LUPERCIO and JEREMIAH FIGUEROA are "Surenos," that is, they are
18  members of various Southern California Hispanic street gangs.  They
19  act as Mexican Mafia "soldiers," who take directions from Mexican
20  Mafia members and the "shot callers" of their various gangs, and who
21  are responsible for conducting the day-to-day business of the Mexican
22  Mafia, including, but not limited to, robbery, assault, distributing
23  drugs, extortion and money laundering.

24        i.    Defendants JUANA ARAIZA, JANETTE HERNANDEZ, ULICES
25  LOPEZ, TAMMARRA RIVERA, TONY GARCIA, CYNTHIA VARELA, SARAH QUINTANA,
26  MARCELINA REYNOSO, are Mexican Mafia facilitators who conduct some of
27  the day-to-day operations of the Mexican Mafia, including distributing
28  drugs, assisting in the delivery of tax money to Mexican Mafia members

12

1  and robbery and assault at the direction of Mexican Mafia members.

2  Those individuals also promote the activities of the Mexican Mafia by

3  transmitting messages between Mexican Mafia members, associates and

4  affiliates.

5  **THE RACKETEERING CONSPIRACY**

6      15.   Beginning in or about August 2010, and continuing through

7  January 2012, within the Southern District of California and

8  elsewhere, defendants and others known and unknown to the grand jury,

9  being employed by and associated with the Mexican Mafia, which

10 Enterprise was engaged in, and the activities of which affected

11 interstate and foreign commerce, did knowingly and intentionally

12 conspire with each other, and with other persons, to violate Title 18,

13 United States Code, Section 1962(c), that is, to conduct and

14 participate, directly and indirectly, in the conduct of the

15 Enterprise's affairs through a pattern of racketeering activity as

16 that term is defined in Title 18, United States Code, Sections 1961(1)

17 and 1961(5).   The pattern of racketeering activity consisted of

18 multiple acts:

19          a.   involving murder, in violation of California

20               Penal Code, Sections 664 and 187(a);

21          b.   involving kidnaping in violation of California

22               Penal Code, Sections 664 and 207(a);

23          c.   involving robbery in violation of California

24               Penal Code, Sections 182, 211 and 664;

25          d.   involving extortion in violation of California

26               Penal Code, Section 182, 518 and 664;

27          e.   involving the distribution, possession with

28               intent to distribute and conspiracy to distribute

13

1    controlled substances in violation of Title 21,

2    United States Code, Sections 841(a)(1) and 846;

3    and

4    f.   indictable under Title 18, United States Code,

5    Sections 1956(h) (conspiracy to launder money).

6    16.   It was a further part of the conspiracy that each defendant

7 agreed that a conspirator would commit at least two acts of

8 racketeering activity in the conduct of the affairs of the Enterprise.

9                          **OVERT ACTS**

10    17.   In furtherance of the conspiracy and to accomplish the

11 objects of the conspiracy, the defendants and their coconspirators

12 committed the following overt acts, among others, in San Diego County,

13 within the Southern District of California, unless otherwise

14 specified, on or about the dates set forth below:

15         (1)   On or about August 15, 2010, defendant FERNANDO

16               CARAPIA possessed, with intent to distribute,

17               both methamphetamine and heroin.

18         (2)   On or about August 18, 2010, defendant CYNTHIA

19               VARELA and an associate discussed making Mexican

20               Mafia tax payments on behalf of defendant PABLO

21               FRANCO and the Varrio Fallbrook Locos gang to

22               defendant RUDY ESPUDO.

23         (3)   On or about September 3, 2010, defendant CYNTHIA

24               VARELA and an associate discussed making Mexican

25               Mafia tax payments on behalf of defendant PABLO

26               FRANCO and the Varrio Fallbrook Locos gang to

27               defendant RUDY ESPUDO.

28

14

1       (4)     On or about September 7, 2010, defendant ADAN

2                 LANDEROS provided approximately an eighth of an

3                 ounce of methamphetamine to an associate to sell

4                 to customers.

5       (5)     On or about September 9, 2010, defendant ADAN

6                 LANDEROS collected $200 from an associate for

7                 methamphetamine LANDEROS previously provided to

8                 be sold to customers.

9       (6)     On or about September 27, 2010, defendants

10                CYNTHIA VARELA and SARAH QUINTANA met with an

11                associate and provided a $400 tax payment on

12                behalf of defendant PABLO FRANCO and the Varrio

13                Fallbrook Locos gang, which the associate was to

14                deliver to defendant RUDY ESPUDO.

15       (7)     On or about September 28, 2010, defendant ADAN

16                LANDEROS arranged to sell an ounce of

17                methamphetamine to a customer.

18       (8)     On or about September 29, 2010, defendant ADAN

19                LANDEROS sold approximately one ounce of

20                methamphetamine to a customer for $1,300, wherein

21                during the sale, LANDEROS instructed the customer

22                to refer to the color "green" when ordering an

23                ounce of methamphetamine and the color "blue"

24                when ordering a half ounce of methamphetamine.

25       (9)     On or about October 5, 2010, defendants RUDY

26                ESPUDO and ANGELINA CHAVEZ-ESPUDO collected a

27                $400 tax payment, which was delivered on behalf

28

1        of defendant PABLO FRANCO and the Varrio

2        Fallbrook Locos gang.

3    (10)    On or about October 5, 2010, defendant RUDY

4        ESPUDO instructed an associate to inform

5        defendant CYNTHIA VARELA that ESPUDO expected to

6        receive a $400 tax payment each month on behalf

7        of defendant PABLO FRANCO and the Varrio

8        Fallbrook Locos gang.

9    (11)    On or about October 6, 2010, defendant ADAN

10       LANDEROS informed an associate that because he

11       was the "shot caller" of the Diablos gang,

12       LANDEROS was responsible for both collecting and

13       delivering Mexican Mafia tax money to the

14       hierarchy on behalf of the Diablos gang.

15    (12)    On or about October 28, 2010, defendant ADAN

16       LANDEROS arranged to sell two ounces of

17       methamphetamine to a customer and instructed the

18       customer to meet "two white chicks" in a parking

19       lot, wherein the customer received approximately

20       two ounces of methamphetamine in exchange for

21       $2,600.

22    (13)    On or about October 29, 2010, defendant CYNTHIA

23       VARELA informed an associate that she was going

24       to discuss with defendant PABLO FRANCO the amount

25       of the Mexican Mafia tax payment due to defendant

26       RUDY ESPUDO.

27    (14)    On or about October 31, 2010, defendant RUDY

28       ESPUDO instructed defendant CYNTHIA VARELA that

he expected a tax payment every month on behalf
of defendant PABLO FRANCO and the Varrio
Fallbrook Locos gang.

(15)    On or about November 12, 2010, defendants RUDY
ESPUDO and ANGELINA CHAVEZ-ESPUDO instructed an
associate to inform defendant CYNTHIA VARELA that
another $400 tax payment was due on behalf of
defendant PABLO FRANCO and the Varrio Fallbrook
Locos gang.

(16)    On or about November 21, 2010, defendants RUDY
ESPUDO and ANGELINA CHAVEZ-ESPUDO instructed an
associate to inform defendant CYNTHIA VARELA that
because the tax payment was late, VARELA had to
"babysit five days instead of four days," that is
the tax payment was $500 instead of $400 on
behalf of defendant PABLO FRANCO and the Varrio
Fallbrook Locos gang.

(17)    On or about November 27, 2010, defendant CYNTHIA
VARELA made a tax payment directly to defendant
RUDY ESPUDO and advised an associate that she was
concerned the late payment would put defendant
PABLO FRANCO at risk of retribution.

(18)    On or about November 29, 2010, defendant ANGELINA
CHAVEZ-ESPUDO instructed an associate to remind
defendant CYNTHIA VARELA that a $500 tax payment
was due and that defendant RUDY ESPUDO was
"pissed" that the tax payment was late and that
if VARELA was "bullshittin . . . she's gonna be

17

1    sorry," that is there would be violent

2    retribution for failing to make timely Mexican

3    Mafia tax payments.

4    (19)    On or about November 29, 2010, defendant RUDY

5    ESPUDO informed an associate that he wanted to

6    see "five pictures," that is a $500 tax payment,

7    from defendant CYNTHIA VARELA on behalf of

8    defendant PABLO FRANCO and the Varrio Fallbrook

9    Locos gang by the first of each month, but that

10   ESPUDO would give until the 15th in December.

11   (20)    From on or about December 2010, through at least

12   September 2011, defendant FRANCISCO GUTIERREZ,

13   the "shot caller" for the Varrio Fallbrook Locos

14   gang, was responsible for the collection of

15   Mexican Mafia tax money inside the Vista

16   Detention Facility and took instruction from

17   defendant PABLO FRANCO.

18   (21)    On or about December 1, 2010, an associate

19   informed defendant CYNTHIA VARELA that she had

20   until December 15, 2010, to pay $500 tax money to

21   defendant RUDY ESPUDO, wherein VARELA advised the

22   associate that she had sent Mexican Mafia tax

23   money to a post office box.

24   (22)    On or about December 8, 2010, defendant ANGELINA

25   CHAVEZ-ESPUDO informed an associate that if

26   defendant CYNTHIA VARELA had lost a tax payment,

27   she would have to replace the tax money due to

28   defendant RUDY ESPUDO.

(23) On or about December 8, 2010, defendant CYNTHIA VARELA advised an associate that she had met with defendant PABLO FRANCO, wherein VARELA relayed defendant RUDY ESPUDO's instructions to deliver a $500 tax payment each month on behalf of FRANCO and the Varrio Fallbrook Locos gang.

(24) On or about December 8, 2010, defendant CYNTHIA VARELA informed an associate that "his people," that is Varrio Fallbrook Locos gang members loyal to defendant PABLO FRANCO, were set up to have Mexican Mafia tax money ready by the 6th or 7th of the month, but that she had not heard anything.

(25) On or about December 16, 2010, defendant SARAH QUINTANA paid a $500 tax payment, on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang, to an associate to be delivered to defendant RUDY ESPUDO.

(26) On or about December 18, 2010, defendant ANGELINA CHAVEZ-ESPUDO met with an associate and collected a $500 tax payment that had been provided by defendant SARAH QUINTANA on December 16, 2010.

(27) On or about December 21, 2010, defendant JESUS BARRAGAN arranged to sell a half ounce of methamphetamine to a customer for $650, wherein BARRAGAN instructed the customer to refer to future drug purchases as a "party" or "little kid's party" and refer to ounce quantities of

methamphetamine as "pinatas" and half-ounce quantities of methamphetamine as "bottles."

(28)  On or about December 22, 2010, defendant JESUS BARRAGAN sold approximately a half ounce of methamphetamine to a customer for $650.

(29)  On or about January 12, 2011, defendant CYNTHIA VARELA informed an associate, "I have 5 that I was asked 2 give to you for A," that is VARELA had a $500 tax payment on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang for defendants ANGELINA CHAVEZ-ESPUDO and RUDY ESPUDO, wherein VARELA made arrangements for defendant SARAH QUINTANA to deliver the tax payment.

(30)  On or about January 12, 2011, an associate advised defendant ANGELINA CHAVEZ-ESPUDO that defendant CYNTHIA VARELA "can babysit 5 days a week," that is VARELA had a $500 tax payment on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang.

(31)  On or about January 14, 2011, defendant ANGELINA CHAVEZ-ESPUDO collected a $500 tax payment from defendant SARAH QUINTANA on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang.

(32)  On or about January 15, 2011, an associate inside the Vista Detention Facility advised defendant JESUS BARRAGAN that defendant EVERST CRUZ was going to be assaulted because of a "green light"

20

1    on the West Side gang, wherein BARRAGAN advised

2    that he was still short money for the West Side

3    gang's "fuckin' two thousand dollars" tax payment

4    to defendant RUDY ESPUDO.

5    (33)    On or about January 15, 2011, defendant FERNANDO

6    CARAPIA, an inmate in the Vista Detention

7    Facility, advised defendant JESUS BARRAGAN that

8    defendant EVERST CRUZ was going to be assaulted

9    because of a "green light" on the West Side gang,

10    wherein BARRAGAN advised that he was still short

11    money for the West Side gang's "fuckin' two

12    thousand dollars" tax payment to defendant RUDY

13    ESPUDO.

14    (34)    On or about January 15, 2011, defendant FERNANDO

15    CARAPIA advised defendant JESUS BARRAGAN that all

16    West Side gang members arrested from December 25,

17    2010, onward would be assaulted for the gang's

18    failure to make a full tax payment on time, and

19    CARAPIA further advised BARRAGAN to smuggle drugs

20    into the facility and CARAPIA would oversee their

21    distribution in order to fulfill the West Side

22    gang's tax payment.

23    (35)    On or about February 4, 2011, defendant FRANCISCO

24    GUTIERREZ advised defendant ERIK LUPERCIO, who

25    was incarcerated in the Vista Detention Facility,

26    "they say everything is okay; they send their

27    hello to yourself and the camarada and to send

28    all our love to those from the West Side," that

is, the "green light" had been lifted from the West Side gang because the gang had fulfilled its Mexican Mafia tax obligation to defendant RUDY ESPUDO.

(36)   On or about February 24, 2011, defendant IVAN DUNAYEVICH and an associate agreed that the Varrio San Marcos gang would tax individuals and DUNAYEVICH, as the "shot caller" for the gang, would send tax money to a Mexican Mafia member in federal custody.

(37)   On or about February 25, 2011, defendant FRANCISCO GUTIERREZ informed defendant ERIK LUPERCIO that defendants RUDY ESPUDO and PABLO FRANCO were demanding $500 per month in taxes from inmates inside the Vista Detention Facility.

(38)   On or about February 25, 2011, defendant ERIK LUPERCIO advised defendant FRANCISCO GUTIERREZ that LUPERCIO would continue to oversee the sale of drugs inside the Vista Detention Facility and "hopefully all the magazines arrive for the 15th of next month," that is the Mexican Mafia tax money would be delivered from inmates inside the facility.

(39)   On or about February 25, 2011, defendant FRANCISCO GUTIERREZ requested defendant SARAH QUINTANA relay a message to "Casper," that is defendant PABLO FRANCO, that GUTIERREZ had spoken to the "homies," that is inmates inside the Vista

22

Detention Facility, and the inmates had already sent tax money to another Mexican Mafia member and were attempting to provide the additional tax money ordered by defendants RUDY ESPUDO and FRANCO.

(40)   On or about February 25, 2011, defendant SARAH QUINTANA advised defendant FRANCISCO GUTIERREZ that she had a letter for him from defendant PABLO FRANCO.

(41)   On or about February 26, 2011, defendant SARAH QUINTANA told defendant CYNTHIA VARELA that inmates inside the Vista Detention Facility had provided tax money to another Mexican Mafia member besides defendant RUDY ESPUDO.

(42)   On or about February 26, 2011, defendants SARAH QUINTANA and CYNTHIA VARELA discussed defendant PABLO FRANCO allowing more time for defendant FRANCISCO GUTIERREZ to secure additional tax money to be paid to defendants RUDY ESPUDO and FRANCO.

(43)   On or about February 26, 2011, defendant CYNTHIA VARELA advised defendant SARAH QUINTANA to inform defendant FRANCISCO GUTIERREZ that the tax money should come from inmates inside the Vista Detention Facility, and not from GUTIERREZ personally.

(44)   On or about February 27, 2011, defendants ERIK LUPERCIO and FRANCISCO GUTIERREZ discussed how

23

the sale of drugs and collection of Mexican Mafia tax money inside the Vista Detention Facility were slow because jail authorities had cracked down, wherein GUTIERREZ advised LUPERCIO that the tax money should be collected and sent by the 15th of each month.

(45)   In or about March 2011, through May 2011, defendant IVAN DUNAYEVICH was the "shot caller" for the Varrio San Marcos gang.

(46)   In or about March 2011, defendant IVAN DUNAYEVICH collected tax money from an associate.

(47)   On or about March 1, 2011, through November 2011, defendant MIGUEL GRADO was the "shot caller" for the Diablos gang.

(48)   On or about March 1, 2011, defendant JESUS BARRAGAN provided a $960 tax payment on behalf of the West Side gang to defendant MIGUEL GRADO, which was delivered to defendant ANGELINA CHAVEZ-ESPUDO on behalf of defendant RUDY ESPUDO.

(49)   On or about March 1, 2011, defendant ANGELINA CHAVEZ-ESPUDO informed defendant MIGUEL GRADO that the West Side gang tax payment was short $40, and GRADO advised defendant JESUS BARRAGAN of the same.

(50)   On or about March 3, 2011, defendant JESUS BARRAGAN delivered the outstanding $40 tax payment to defendant MIGUEL GRADO, which GRADO

24

subsequently delivered to defendant ANGELINA CHAVEZ-ESPUDO.

(51)   On or about March 3, 2011, defendant JESUS BARRAGAN threatened defendant EDUARDO SANCHEZ that he would "shoot you in your fucking legs" and that other West Side gang members would be looking for SANCHEZ if SANCHEZ did not pay BARRAGAN $300 in taxes.

(52)   On or about March 4, 2011, defendant ANGELINA CHAVEZ-ESPUDO collected a $600 tax payment on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang, which was deposited into the bank account of defendant RUDY ESPUDO by defendant SARAH QUINTANA.

(53)   On or about March 4, 2011, defendants CYNTHIA VARELA and SARAH QUINTANA discussed forwarding Mexican Mafia tax payments to defendant PABLO FRANCO.

(54)   On or about March 5, 2011, defendant ERIK LUPERCIO arranged for Mexican Mafia tax money collected on behalf of inmates at the Vista Detention Facility and from the sale of drugs within the facility to be delivered to defendant FRANCISCO GUTIERREZ.

(55)   On or about March 5, 2011, defendant JUANA ARAIZA possessed approximately 11.9 grams of methamphetamine with intent to distribute.

(56)    On or about March 8, 2011, defendant IVAN DUNAYEVICH advised an associate that taxing by the Varrio San Marcos gang was proceeding as previously discussed.

(57)    On or about March 8, 2011, defendant JESUS BARRAGAN arranged to sell two ounces of methamphetamine and three ounces of cocaine to a customer.

(58)    On or about March 9, 2011, defendant SARAH QUINTANA relayed a message to defendant FRANCISCO GUTIERREZ that defendant PABLO FRANCO was demanding a $200 tax payment.

(59)    On or about March 10, 2011, defendant JESUS BARRAGAN sold approximately two ounces of methamphetamine and three ounces of cocaine to a customer in exchange for $3,000.

(60)    On or about March 11, 2011, defendant JESUS BARRAGAN agreed to sell methamphetamine to a customer for $1,050 per ounce.

(61)    On or about March 13, 2011, defendant CYNTHIA VARELA instructed defendant FRANCISCO GUTIERREZ that a $110 tax payment needed to be made to defendant PABLO FRANCO by March 18, 2011.

(62)    On or about March 13, 2011, defendant JESUS BARRAGAN requested defendant ARMANDO BARRAGAN supply him with good-quality methamphetamine and both discussed working with another drug dealer to distribute larger quantities of cocaine.

(63)   On or about March 14, 2011, defendant ARMANDO BARRAGAN supplied defendant JESUS BARRAGAN with methamphetamine to distribute to customers.

(64)   On or about March 14, 2011, through March 15, 2011, defendants CYNTHIA VARELA and SARAH QUINTANA arranged for defendant FRANCISCO GUTIERREZ to provide a tax payment for defendant PABLO FRANCO, which QUINTANA collected.

(65)   On or about March 15, 2011, defendant JESUS BARRAGAN sold approximately two ounces of methamphetamine, which had been supplied by defendant ARMANDO BARRAGAN, to a customer in exchange for $1,950.

(66)   On or about March 15, 2011, defendant JESUS BARRAGAN instructed defendant FRANCISCO ZAMORA to look for an associate who owed tax money and "take his shit," that is rob the individual that owed tax money.

(67)   On or about March 17, 2011, defendant JESUS BARRAGAN advised defendant FRANCISCO ZAMORA that there would be retribution if the West Side gang's Mexican Mafia tax payment "came up short."

(68)   On or about March 17, 2011, defendant JESUS BARRAGAN instructed defendant EVERST CRUZ to collect tax payments from drug dealers in order for the West Side gang to fulfill its monthly Mexican Mafia tax obligation.

(69)   On or about March 17, 2011, defendant JESUS BARRAGAN agreed to provide a handgun to defendants FRANCISCO ZAMORA and EVERST CRUZ to use to threaten, rob and extort Mexican Mafia tax payments from individuals.

(70)   On or about March 19, 2011, through March 20, 2011, defendants FRANCISCO ZAMORA and EVERST CRUZ agreed to "get down to business" and "lighting fools up," that is robbing individuals in order to collect Mexican Mafia taxes.

(71)   On or about March 19, 2011, defendant CYNTHIA VARELA deposited Mexican Mafia tax proceeds into defendant PABLO FRANCO's inmate account at R.J. Donovan Prison.

(72)   On or about March 20, 2011, various members of the Varrio San Marcos gang, including defendants IVAN DUNAYEVICH and OSCAR LARA, held a meeting in which DUNAYEVICH announced he was the "shot caller" for the gang and instructed those present to locate "connectas," that is drug dealers, so that DUNAYEVICH could arrange to tax them.

(73)   On or about March 20, 2011, defendant JESUS BARRAGAN collected tax money from a drug dealer.

(74)   On or about March 21, 2011, defendant JESUS BARRAGAN instructed defendants FRANCISCO ZAMORA and EVERST CRUZ to locate a particular individual who needed to "come up with 200," that is a $200 tax payment.

28

(75)   On or about March 21, 2011, through March 23, 2011, defendants FRANCISCO ZAMORA and EVERST CRUZ located an individual that owed the West Side gang tax money and forced that individual to arrange for payment to defendant JESUS BARRAGAN.

(76)   On or about March 24, 2011, on behalf of the West Side gang, defendant FRANCISCO ZAMORA collected tax money from an individual and delivered that tax money to defendant JESUS BARRAGAN.

(77)   On or about March 25, 2011, defendant FRANCISCO GUTIERREZ instructed an associate to cash money orders received on behalf of inmates from the Vista Detention Facility, which represented Mexican Mafia tax payments.

(78)   On or about March 25, 2011, defendant JESUS BARRAGAN informed a drug dealer that the West Side gang's tax payment was due to defendant RUDY ESPUDO by March 28, 2011.

(79)   On or about March 26, 2011, defendant JESUS BARRAGAN collected tax money from a drug dealer.

(80)   On or about March 26, 2011, defendant FRANCISCO GUTIERREZ advised defendant SARAH QUINTANA that he had tax money to be provided to defendant PABLO FRANCO.

(81)   On or about March 28, 2011, defendant JESUS BARRAGAN advised defendant MIGUEL GRADO that BARRAGAN had tax money on behalf of the West Side gang to be delivered to defendant RUDY ESPUDO,

29

wherein GRADO arranged for BARRAGAN to provide the tax payment to defendant GERARDO BARAJAS.

(82)     On or about March 28, 2011, defendant GERARDO BARAJAS collected tax money from defendant JESUS BARRAGAN, on behalf of the West Side gang, and delivered that money to defendant MIGUEL GRADO.

(83)     On or about March 29, 2011, on behalf of defendant PABLO FRANCO, defendant SARAH QUINTANA collected tax money from defendant FRANCISCO GUTIERREZ, which had been provided by inmates at the Vista Detention Facility.

(84)     On or about March 30, 2011, defendant ANGELINA CHAVEZ-ESPUDO collected tax money from defendant MIGUEL GRADO.

(85)     On or about March 30, 2011, defendant EVERST CRUZ possessed methamphetamine with intent to distribute.

(86)     On or about March 30, 2011, defendant JESUS BARRAGAN asked if defendant EVERST CRUZ was prepared to make his tax payment and CRUZ advised he needed to sell more drugs to fulfill his payment obligation.

(87)     In or about April 2011, defendant IVAN DUNAYEVICH collected tax money from an associate.

(88)     On or about April 1, 2011, defendant JESUS BARRAGAN collected tax money from defendant EVERST CRUZ, wherein BARRAGAN also agreed to

30

supply CRUZ with additional methamphetamine to sell to customers.

(89)     On or about April 3, 2011, defendant FRANCISCO GUTIERREZ was advised by an associate that an inmate inside the Vista Detention Facility was cooperating with law enforcement and GUTIERREZ agreed to ensure "that fool," that is the cooperating inmate, would "calm himself down," that is cease to cooperate with law enforcement.

(90)     On or about April 3, 2011, defendant JESUS BARRAGAN informed defendant DANIEL NIETO that BARRAGAN had received a $300 tax payment from NIETO, but that NIETO owed an additional $100 tax payment.

(91)     On or about April 5, 2011, defendant JESUS BARRAGAN collected an additional $100 tax payment from defendant DANIEL NIETO.

(92)     On or about April 6, 2011, defendant JESUS BARRAGAN demanded that defendant EVERST CRUZ provide payment for methamphetamine previously provided, wherein BARRAGAN advised that the money had to "go somewhere," that is to be used towards the West Side tax payment.

(93)     On or about April 7, 2011, defendants JESUS BARRAGAN and FRANCISCO ZAMORA agreed that defendant EVERST CRUZ would have to be assaulted if he failed to provide payment for methamphetamine previously provided, and BARRAGAN

31

and ZAMORA subsequently met with and collected payment from CRUZ.

(94) On or about April 8, 2011, defendants FRANCISCO GUTIERREZ and CESAR FLORES, who was incarcerated in the Vista Detention Facility, agreed to force another inmate to cease cooperating with law enforcement, wherein GUTIERREZ instructed FLORES to "tell that guy to strap on his balls and not say anything" and "tell him to be careful and we send our love," that is the inmate would face retribution if he continued to cooperate with law enforcement.

(95) On or about April 8, 2011, through April 14, 2011, defendant CESAR FLORES instructed a cooperating inmate inside the Vista Detention Facility to cease cooperating with law enforcement or face retribution from the Mexican Mafia.

(96) On or about April 8, 2011, defendants CESAR FLORES and FRANCISCO GUTIERREZ agreed that GUTIERREZ would arrange to have heroin sent to FLORES inside the Vista Detention Facility in order for FLORES to sell to other inmates.

(97) On or about April 8, 2011, defendant FRANCISCO GUTIERREZ instructed an associate to provide heroin to be smuggled to defendant CESAR FLORES inside the Vista Detention Facility.

(98)    On or about April 9, 2011, defendant IVAN DUNAYEVICH advised an associate that the Varrio San Marcos gang was almost finished collecting Mexican Mafia tax for that period, and DUNAYEVICH would mail a portion to the associate as well as to a Mexican Mafia member in federal custody.

(99)    On or about April 9, 2011, defendant JESUS BARRAGAN provided methamphetamine to defendant DANIEL NIETO to sell to customers, wherein BARRAGAN instructed NIETO to pay $200 for the methamphetamine.

(100)   On or about April 10, 2011, defendant DANIEL NIETO complained that the methamphetamine previously provided by defendant JESUS BARRAGAN to sell to customers was "not good" and BARRAGAN advised he had "some other shit," that is better quality methamphetamine.

(101)   On or about April 10, 2011, defendant DANIEL NIETO advised that he had a $100 tax payment for defendant JESUS BARRAGAN.

(102)   On or about April 13, 2011, defendant JESUS BARRAGAN collected money from defendant DANIEL NIETO and re-supplied NIETO with methamphetamine to sell to customers.

(103)   On or about April 13, 2011, defendant DANIEL NIETO possessed methamphetamine with intent to distribute to customers.

33

(104)   On or about April 13, 2011, defendant ANGELINA CHAVEZ-ESPUDO relayed a message to defendant CYNTHIA VARELA for defendant PABLO FRANCO, that defendant RUDY ESPUDO wanted to know the status of the tax payment on behalf of FRANCO and the Varrio Fallbrook Locos gang.

(105)   On or about April 13, 2011, defendant CYNTHIA VARELA informed defendant ANGELINA CHAVEZ-ESPUDO that VARELA was expecting a $500 tax payment on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang, wherein VARELA ensured the tax money would be delivered to CHAVEZ.

(106)   On or about April 15, 2011, defendant DANIEL NIETO possessed, with intent to distribute, methamphetamine.

(107)   On or about April 15, 2011, defendant DANIEL NIETO advised defendant JESUS BARRAGAN that NIETO had a $100 payment for methamphetamine previously supplied by BARRAGAN, and requested BARRAGAN supply NIETO with better quality methamphetamine to sell to customers.

(108)   On or about April 18, 2011, defendant DANIEL NIETO possessed, with intent to distribute, methamphetamine.

(109)   On or about April 18, 2011, defendant DANIEL NIETO sold methamphetamine to customers and advised defendant JESUS BARRAGAN that the sales of methamphetamine were "so far, so good."

34

(110) On or about April 19, 2011, defendant JESUS BARRAGAN supplied defendant DANIEL NIETO with methamphetamine to sell to customers and NIETO provided $200 to BARRAGAN as payment.

(111) On or about April 19, 2011, defendant MIGUEL GRADO arranged to purchase cocaine from an associate.

(112) On or about April 20, 2011, defendant MIGUEL GRADO purchased a half pound of cocaine and provided an amount to defendant ENRIQUE TORRES, who then sold the cocaine to a customer.

(113) On or about April 20, 2011, defendant JESUS BARRAGAN supplied defendant DANIEL NIETO with methamphetamine to sell to customers.

(114) On or about April 20, 2011, defendant MIGUEL GRADO directed defendant HECTOR FERNANDEZ to arrange a meeting with defendant IVAN DUNAYEVICH, the "shot caller" for the Varrio San Marcos gang, to discuss the payment of tax money to the Mexican Mafia.

(115) On or about April 20, 2011, defendant HECTOR FERNANDEZ arranged for defendant IVAN DUNAYEVICH to meet with defendants MIGUEL GRADO and FERNANDEZ to discuss the payment of Mexican Mafia taxes.

(116) On or about April 21, 2011, defendant IVAN DUNAYEVICH met with defendants MIGUEL GRADO and HECTOR FERNANDEZ and other Diablos gang members,

35

wherein GRADO advised, "there is a carnal out here and I am fuckin' with him, and I am working for him, you touch up homie and I will let him know where it is coming from," that is the Varrio San Marcos gang would have to provide tax money to defendant RUDY ESPUDO.

(117)   On or about April 21, 2011, defendant MIGUEL GRADO advised defendant IVAN DUNAYEVICH that until defendant RUDY ESPUDO was released from prison, his "senora," that is defendant ANGELINA CHAVEZ-ESPUDO, was handling his affairs on the street.

(118)   On or about April 21, 2011, defendant MIGUEL GRADO advised that a drug dealer formerly from San Marcos was now operating in Escondido, California, and was now required to pay tax money to either the Diablos or the West Side gangs, wherein defendant IVAN DUNAYEVICH advised the drug dealer had previously paid DUNAYEVICH tax money on multiple occasions.

(119)   On or about April 21, 2011, through April 25, 2011, defendant ARMANDO BARRAGAN and an associate made arrangements to purchase methamphetamine from a source of supply to sell to customers.

(120)   On or about April 22, 2011, defendant MIGUEL GRADO supplied methamphetamine to defendant GUSTAVO BARRON, which was to be sold to customers.

36

(121)  On or about April 22, 2011, defendant GUSTAVO BARRON possessed, with intent to distribute, both methamphetamine and cocaine.

(122)  On or about April 22, 2011, defendant MIGUEL GRADO collected Mexican Mafia tax money from defendant JUAN PEREZ.

(123)  On or about April 22, 2011, defendant CESAR FLORES advised defendant FRANCISCO GUTIERREZ that he had "handled that already, the white guy - I already told him; he signed and everything," that is FLORES instructed the cooperating inmate to stop cooperating with law enforcement or face retribution and the cooperating inmate had agreed to do so and pled guilty.

(124)  On or about April 22, 2011, defendant CESAR FLORES arranged for $200 in Mexican Mafia tax money to be sent to a post office box for defendant FRANCISCO GUTIERREZ to collect and deliver.

(125)  On or about April 23, 2011, defendant FRANCISCO GUTIERREZ possessed heroin with the intent to have the heroin smuggled into defendant CESAR FLORES at the Vista Detention Facility for FLORES to sell to other inmates.

(126)  On or about April 23, 2011, defendant MIGUEL GRADO possessed both marijuana and methamphetamine and offered to sell amounts of

37

either drug to defendant GUSTAVO BARRON for distribution to customers.

(127) On or about April 25, 2011, defendant ARMANDO BARRAGAN provided narcotics proceeds to an associate to pay a source of supply for distributable quantities of methamphetamine.

(128) On or about April 25, 2011, defendant JULIO SOLORZANO advised defendant MIGUEL GRADO that he had a customer who wanted to purchase more ecstasy than SOLORZANO possessed and GRADO agreed to sell him additional ecstasy pills that GRADO was storing at defendant ENRIQUE TORRES' residence.

(129) On or about April 26, 2011, defendant ARMANDO BARRAGAN and an associate obtained methamphetamine, which BARRAGAN then sold to customers.

(130) On or about April 26, 2011, defendant JESUS BARRAGAN advised defendant ARMANDO BARRAGAN that ARMANDO BARRAGAN owed a $200 tax payment, defendant ELVIRA ESPARZA owed a $100 tax payment and another individual owed a $400 tax payment, which were to be passed to defendant RUDY ESPUDO.

(131) On or about April 26, 2011, defendant ARMANDO BARRAGAN provided defendant JESUS BARRAGAN with a $200 tax payment and defendant ELVIRA ESPARZA provided a $100 tax payment to JESUS BARRAGAN.

(132)    On or about April 26, 2011, defendant MIGUEL GRADO informed defendant JESUS BARRAGAN that GRADO needed to collect the West Side gang's tax money due to defendant RUDY ESPUDO and BARRAGAN advised he needed to collect another $100 from an associate to fulfill the gang's payment.

(133)    On or about April 26, 2011, defendant MIGUEL GRADO collected the West Side gang's tax payment from defendant JESUS BARRAGAN and delivered that money to defendant TONY GARCIA at defendant MARCELINA REYNOSO's residence, in order for it to be passed to defendant ANGELINA CHAVEZ-ESPUDO.

(134)    On or about April 26, 2011, defendant TONY GARCIA met with defendant ANGELINA CHAVEZ-ESPUDO at defendant MARCELINA REYNOSO's residence and passed her tax money received from defendant MIGUEL GRADO.

(135)    On or about April 27, 2011, through April 29, 2011, defendant MIGUEL GRADO agreed to sell an ounce and a half of cocaine to defendant GUSTAVO BARRON for distribution to customers, and then provided the same to BARRON.

(136)    On or about April 27, 2011, defendant MIGUEL GRADO arranged to collect additional tax money from defendant JUAN PEREZ, and PEREZ subsequently delivered the tax money to defendant ENRIQUE TORRES.

(137)   On or about April 27, 2011, defendant MIGUEL GRADO agreed to supply defendant JUAN PEREZ with cocaine to sell to customers, wherein GRADO requested defendant ENRIQUE TORRES supply PEREZ with a half ounce of cocaine, which TORRES did.

(138)   On or about April 28, 2011, defendant TONY GARCIA arranged to secure methamphetamine from defendant MIGUEL GRADO for defendant ANGELINA CHAVEZ-ESPUDO, which GRADO delivered to GARCIA.

(139)   On or about April 28, 2011, defendant TONY GARCIA delivered methamphetamine to defendant ANGELINA CHAVEZ-ESPUDO that GARCIA had received from defendant MIGUEL GRADO.

(140)   On or about April 28, 2011, defendants JESUS BARRAGAN and MIGUEL GRADO discussed a drug dealer who failed to provide a tax payment to the Mexican Mafia, wherein GRADO advised BARRAGAN to rob the drug dealer, stating, "do it dawg, go ahead . . . . and tell that fool that he's gonna start paying us, fool . . . and if he don't want to, then fuck you," that is the drug dealer would have to pay the Mexican Mafia tax or be robbed and/or assaulted.

(141)   On or about April 28, 2011, defendant ELVIRA ESPARZA directed defendant JESUS BARRAGAN to the location of a drug dealer in order for BARRAGAN to rob him for failing to pay Mexican Mafia tax.

(142)   On or about April 28, 2011, defendant JESUS BARRAGAN robbed a drug dealer that had failed to pay Mexican Mafia tax.

(143)   On or about April 30, 2011, defendant MIGUEL GRADO agreed to supply defendant JUAN PEREZ with additional cocaine to sell to customers.

(144)   On or about April 30, 2011, defendant JESUS BARRAGAN instructed an associate to deliver methamphetamine to and collect money from defendant DANIEL NIETO.

(145)   On or about April 30, 2011, at the direction of defendant JESUS BARRAGAN, an associate delivered methamphetamine to defendant DANIEL NIETO to sell to customers.

(146)   On or about April 30, 2011, defendant JESUS BARRAGAN told defendant DANIEL NIETO, "I need two bills for that one," that is NIETO was to pay BARRAGAN $200 for methamphetamine previously provided.

(147)   On or about April 30, 2011, defendant FRANCISCO GUTIERREZ agreed to smuggle heroin into an associate who was incarcerated in the San Diego Central Jail.

(148)   On or about April 30, 2011, defendant ARMANDO BARRAGAN and an associate agreed to purchase approximately $2,000 worth of methamphetamine to sell to customers.

(149)   In or about May 2011, defendant IVAN DUNAYEVICH collected tax money from multiple individuals.

(150)   In or about May 2011, defendant OSCAR LARA collected tax money from multiple individuals.

(151)   On or about May 1, 2011, through May 2, 2011, defendant ARMANDO BARRAGAN complained to an associate about the poor quality of methamphetamine that BARRAGAN had previously received from the associate to sell to customers, wherein the associate agreed to supply alternate methamphetamine.

(152)   On or about May 2, 2011, defendant ARMANDO BARRAGAN purchased one ounce of methamphetamine from an associate to sell to customers.

(153)   On or about May 3, 2011, defendant HECTOR FERNANDEZ sold heroin to a customer.

(154)   On or about May 3, 2011, defendant FRANCISCO GUTIERREZ sent a "cartas," that is a card with heroin secreted inside, to an associate in the San Diego Central Jail.

(155)   On or about May 5, 2011, through May 6, 2011, defendant ARMANDO BARRAGAN distributed methamphetamine to multiple customers, and advised an associate that his customers were indicating that the alternate methamphetamine was of good quality.

(156) On or about May 5, 2011, defendant DANIEL NIETO requested defendant JESUS BARRAGAN resupply NIETO with methamphetamine to sell to customers.

(157) On or about May 8, 2011, defendant JESUS BARRAGAN supplied defendant DANIEL NIETO with methamphetamine to sell to customers and NIETO provided BARRAGAN with narcotics proceeds.

(158) On or about May 10, 2011, defendant TONY GARCIA delivered "the other half of those pictures," that is the remaining half of Mexican Mafia tax money provided by various gangs to defendant ANGELINA CHAVEZ-ESPUDO.

(159) On or about May 12, 2011, defendant FERNANDO CARAPIA, who was incarcerated in the Vista Detention Facility, requested defendant JESUS BARRAGAN send heroin into CARAPIA for him to sell to other inmates.

(160) On or about May 13, 2011, defendant DANIEL NIETO provided defendant JESUS BARRAGAN with narcotics proceeds from the sale of methamphetamine.

(161) On or about May 14, 2011, defendant DANIEL NIETO provided defendant JESUS BARRAGAN with narcotics proceeds and BARRAGAN provided NIETO with additional methamphetamine to sell to customers.

(162) On or about May 14, 2011, through May 22, 2011, defendant JESUS BARRAGAN arranged to provide heroin to an associate, who would then smuggle the heroin into the Vista Detention Facility.

43

(163)   On or about May 14, 2011, defendant JEREMIAH FIGUEROA, armed with a knife and handcuffs, and an associate, armed with a handgun, demanded property from J.R., who was with his one-year old child in a vehicle.

(164)   On or about May 14, 2011, defendant JEREMIAH FIGUEROA attempted to stab J.R. with a knife while his associate, while armed with a handgun, attempted to take J.R.'s child from the vehicle in order to force J.R. to give money to FIGUEROA and his associate.

(165)   On or about May 15, 2011, through May 16, 2011, defendant DANIEL NIETO arranged to receive additional methamphetamine from defendant JESUS BARRAGAN to sell to customers.

(166)   On or about May 17, 2011, defendant JESUS BARRAGAN supplied defendant DANIEL NIETO with methamphetamine to sell to customers.

(167)   On or about May 20, 2011, defendants JOSE ORTEGA, who was armed with a handgun, and HECTOR GARCIA sold methamphetamine to a customer, wherein GARCIA advised he would continue to supply methamphetamine to the customer and other individuals the customer referred.

(168)   On or about May 21, 2011, defendant MIGUEL GRADO called defendant ENRIQUE TORRES and instructed him to provide an associate with "three g of

44

soda," that is three grams of cocaine, which TORRES agreed to do.

(169) On or about May 21, 2011, defendant ENRIQUE TORRES provided an associate with three grams of cocaine as previously instructed by defendant MIGUEL GRADO.

(170) On or about May 22, 2011, defendant MIGUEL GRADO possessed methamphetamine with intent to distribute.

(171) On or about May 22, 2011, defendant HECTOR GARCIA possessed, with intent to distribute, methamphetamine and offered to provide additional methamphetamine to defendant MIGUEL GRADO.

(172) On or about May 22, 2011, defendant ELVIRA ESPARZA provided heroin to defendant JESUS BARRAGAN, who provided an amount of heroin to an associate to smuggle into defendant FERNANDO CARAPIA in the Vista Detention Facility.

(173) On or about May 22, 2011, an associate smuggled heroin, which was received from defendant JESUS BARRAGAN, into the Vista Detention Facility to defendant FERNANDO CARAPIA for him to sell to other inmates.

(174) On or about May 22, 2011, defendants JESUS BARRAGAN and ELVIRA ESPARZA obtained methamphetamine to distribute to customers.

45

(175)   On or about May 22, 2011, defendant JESUS BARRAGAN collected narcotics proceeds/tax payment from defendant DANIEL NIETO.

(176)   On or about May 23, 2011, defendant JESUS BARRAGAN supplied defendant DANIEL NIETO with methamphetamine to sell to customers.

(177)   On or about May 24, 2011, defendant JESUS BARRAGAN instructed defendant DANIEL NIETO to collect payment from methamphetamine customers "for the tax man," that is the West Side gang's tax payment was due to defendant RUDY ESPUDO.

(178)   On or about May 24, 2011, defendant JOSE ORTEGA arranged for defendant HECTOR GARCIA to sell methamphetamine to a customer.

(179)   On or about May 24, 2011, defendant HECTOR GARCIA sold approximately 6.7 grams of methamphetamine to a customer.

(180)   On or about May 24, 2011, defendant IVAN DUNAYEVICH told a family member that he had spent tax money that the Varrio San Marcos gang had collected, which was supposed to be forwarded to an associate and to a Mexican Mafia member, both of whom were in federal custody.

(181)   On or about May 28, 2011, defendant ANGELINA CHAVEZ-ESPUDO told an associate to pass information to defendant RUDY ESPUDO that CHAVEZ-ESPUDO needed Mexican Mafia tax money.

46

(182)   On or about May 29, 2011, defendant PABLO FRANCO directed defendant CYNTHIA VARELA to pass her new telephone number to defendant ANGELINA CHAVEZ-ESPUDO and instructed VARELA and defendant SARAH QUINTANA to keep FRANCO's share of tax money from the Varrio Fallbrook Locos gang, which VARELA should ensure is collected.

(183)   On or about May 29, 2011, defendants JESUS BARRAGAN and ELVIRA ESPARZA arranged for BARRAGAN to supply cocaine to another individual.

(184)   On or about May 29, 2011, defendant JESUS BARRAGAN sold approximately one ounce of cocaine to another individual.

(185)   On or about May 30, 2011, defendant MIGUEL GRADO collected tax money from defendant JESUS BARRAGAN on behalf of the West Side gang, and GRADO delivered tax money from both the West Side and Diablos gangs to defendant TONY GARCIA.

(186)   On or about May 30, 2011, defendant TONY GARCIA advised defendant ANGELINA CHAVEZ-ESPUDO that he had received Mexican Mafia tax money from defendant MIGUEL GRADO.

(187)   On or about May 30, 2011, defendants MIGUEL GRADO and JESUS BARRAGAN coordinated the robbery of a drug dealer who had failed to make tax payments to the Mexican Mafia.

47

(188) On or about May 30, 2011, defendant JESUS BARRAGAN robbed a drug dealer that had failed to pay tax money to the Mexican Mafia.

(189) On or about May 31, 2011, defendant JESUS BARRAGAN explained to a drug dealer, "I give it to him to turn in . . . it's all going to the same place," that is BARRAGAN provides defendant MIGUEL GRADO the West Side gang's tax money in order to be delivered to defendants ANGELINA CHAVEZ-ESPUDO and RUDY ESPUDO.

(190) In or about June 2011, defendant IVAN DUNAYEVICH collected tax money from an associate.

(191) On or about June 1, 2011, defendant HECTOR GARCIA directed a customer to an apartment building where he was met by defendant JOSE ORTEGA, who was armed with a handgun and escorted the customer to an apartment to be sold methamphetamine.

(192) On or about June 1, 2011, defendants MIGUEL GRADO, HECTOR GARCIA, JOSE ORTEGA and other associates, at least one of whom was armed with a handgun, were present along with another handgun on a table while ORTEGA and GARCIA weighed out methamphetamine, of which GARCIA subsequently provided approximately 20.7 grams to a customer.

(193) On or about June 2, 2011, defendant JEREMIAH FIGUEROA advised defendant IVAN DUNAYEVICH that

48

FIGUEROA had been "running up on connects that you weren't fucking handling because you are not over here hitting any of those mother fuckers . . . doing your job for you," that is FIGUEROA was robbing drug dealers for tax money and DUNAYEVICH should be as well.

(194) On or about June 4, 2011, defendant FRANCISCO GUTIERREZ advised defendant CESAR FLORES, an inmate at the Vista Detention Facility, that defendant PABLO FRANCO wanted to know the delay in collecting tax money from inmates inside the Vista Detention Facility because "the homie wants his photos and shit," that is defendant RUDY ESPUDO wanted tax money from the inmates inside the Vista Detention Facility.

(195) On or about June 4, 2011, defendants FRANCISCO GUTIERREZ and CESAR FLORES agreed that FLORES would assist another inmate at the Vista Detention Facility with the collection of tax money, which should be sent to GUTIERREZ and if any inmate refused to pay, GUTIERREZ advised, "You know what you have to do," that is assault the inmate who refused to pay.

(196) On or about June 5, 2011, defendant CYNTHIA VARELA advised defendant ANGELINA CHAVEZ-ESPUDO, "I developed some pics that I just picked up. There are five I think you will like," that is VARELA had received $500 tax money from GUTIERREZ

49

on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang.

(197) On or about June 8, 2011, through June 9, 2011, defendant JOSE ORTEGA agreed to sell a half ounce of methamphetamine to a customer for $520 and directed the customer to go to an apartment where defendant MIGUEL GRADO sold the customer approximately 13.8 grams of methamphetamine.

(198) On or about June 9, 2011, defendants JESUS BARRAGAN and MIGUEL GRADO discussed whether a particular drug dealer was paying taxes to the Mexican Mafia and GRADO advised that the drug dealer was "shooting it this way dog . . . all going to the same hands dog," that is the drug dealer was paying the Diablos gang and that tax money all ended up with the Mexican Mafia regardless of which gang was being paid, wherein BARRAGAN responded, "I'll tell the homies to leave him alone too," that is BARRAGAN would instruct West Side gang members not to assault and/or rob the drug dealer for failing to pay taxes.

(199) On or about June 10, 2011, on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang, defendant SARAH QUINTANA passed tax money to defendant ANGELINA CHAVEZ-ESPUDO in a meeting that was arranged by both QUINTANA and defendant CYNTHIA VARELA.

(200)    On or about June 11, 2011, defendant CYNTHIA VARELA advised defendant PABLO FRANCO that the "pictures," that is tax money for the Mexican Mafia, were delivered by defendant SARAH QUINTANA to defendant ANGELINA CHAVEZ-ESPUDO.

(201)    On or about June 15, 2011, defendant OSCAR LARA directed an associate to accompany defendant JEREMIAH FIGUEROA in order to rob a drug dealer.

(202)    On or about June 15, 2011, defendant JEREMIAH FIGUEROA, armed with a handgun, and several associates drove to the home of a drug dealer and entered his residence in order to rob the drug dealer.

(203)    On or about June 18, 2011, defendant HECTOR GARCIA directed a customer to an apartment where defendant GARCIA and JOSE ORTEGA were waiting and GARCIA provided approximately 13.0 grams of methamphetamine.

(204)    On or about June 18, 2011, defendant JOSE ORTEGA advised a customer, "I do grams, balls," that is ORTEGA sold smaller amounts of methamphetamine, while defendant HECTOR GARCIA advised, "When you want a good amount, hit me up . . . you can find this all day," that is GARCIA sold larger amounts of methamphetamine and always had a supply.

(205)    On or about June 21, 2011, a group of Diablos gang members, including defendants HECTOR FERNANDEZ, GREGORIO PUEBLA, JULIO SOLORZANO and

1
2
3
4
5
6
7
8

JOSE CORNEJO, confronted a group of individuals, including D.V., I.M., C.G., B.G. and T.M., and the Diablos gang members claimed, "Diablos, this is Diablos territory" and "Diablos are here, empty your pocket," wherein the Diablos gang members, at least one of whom was armed with a small bat, assaulted the victims and took personal property from them.

9
10
11
12

(206)   On or about June 22, 2011, defendant JOSE ORTEGA requested a gram of cocaine from defendant MIGUEL GRADO in order to sell to a customer, which GRADO subsequently delivered to ORTEGA.

13
14
15
16

(207)   On or about June 23, 2011, defendant MIGUEL GRADO negotiated the purchase of 1000 ecstasy pills from a source of supply, with the intent to distribute those pills to other individuals.

17
18
19

(208)   On or about June 25, 2011, defendant JESUS BARRAGAN possessed approximately seven grams of methamphetamine with intent to distribute.

20
21
22
23

(209)   On or about June 29, 2011, defendant MARCELINA REYNOSO advised defendant TONY GARCIA that defendant MIGUEL GRADO had delivered tax money for defendant RUDY ESPUDO.

24
25
26
27

(210)   On or about June 30, 2011, defendant TONY GARCIA picked up tax money from defendant MARCELINA REYNOSO and subsequently delivered the same to defendant RUDY ESPUDO.

28

(211)    On or about July 1, 2011, defendants ENRIQUE TORRES and MIGUEL GRADO discussed whether a particular drug dealer was paying tax to the Diablos gang, wherein GRADO directed TORRES and other Diablos gang members to force the drug dealer to pay tax money to the Diablos gang.

(212)    On or about July 7, 2011, defendant TONY GARCIA advised defendant RUDY ESPUDO that defendant MIGUEL GRADO provided tax money on behalf of the Diablos gang, but that defendant ELVIRA ESPARZA had failed to provide a tax payment, wherein ESPUDO and GARCIA agreed to discuss the matter the following day when ESPUDO collected the Diablos tax payment.

(213)    On or about July 8, 2011, defendants RUDY ESPUDO and TONY GARCIA met at defendant MARCELINA REYNOSO's residence, where ESPUDO both collected a tax payment being held by REYNOSO and discussed defendant ELVIRA ESPARZA's failure to pay tax with GARCIA.

(214)    On or about July 8, 2011, defendant JOSE ORTEGA possessed a scale, narcotics packaging material, multiple firearms, ammunition and body armor in a residence where ORTEGA and defendants HECTOR GARCIA and MIGUEL GRADO regularly conducted narcotics transactions.

(215)    On or about July 9, 2011, defendant OSCAR LARA advised various associates that he was now the

53

"shot caller" for the Varrio San Marcos gang and was in charge of collecting Mexican Mafia tax payments.

(216)   On or about July 9, 2011, defendant TAMMARRA RIVERA paid defendant JESUS BARRAGAN for methamphetamine previously "fronted" to RIVERA; BARRAGAN then supplied RIVERA with additional methamphetamine to sell to customers.

(217)   On or about July 10, 2011, defendants JESUS BARRAGAN and EDUARDO SANCHEZ discussed and agreed to ensure that an individual pay the West Side gang $250 in tax money each month and if the individual failed to pay the required tax, BARRAGAN and SANCHEZ would "take all his shit every day," that is assault and rob the individual every day until he paid the required Mexican Mafia tax.

(218)   On or about July 11, 2011, defendant JESSY MORENO possessed methamphetamine with intent to distribute and agreed to sell "a ball," that is 3.4 grams, to defendant HECTOR FERNANDEZ.

(219)   On or about July 12, 2011, defendant JESUS BARRAGAN provided a half ounce of methamphetamine to defendant TAMMARRA RIVERA to sell to customers.

(220)   On or about July 13, 2011, defendant TAMMARRA RIVERA distributed methamphetamine to various customers.

54

(221)   On or about July 13, 2011, defendant IVAN DUNAYEVICH acknowledged he was no longer the "shot caller" for the Varrio San Marcos gang.

(222)   On or about July 14, 2011, defendant TAMMARRA RIVERA paid defendant JESUS BARRAGAN narcotics proceeds for methamphetamine previously provided by BARRAGAN.

(223)   On or about July 15, 2011, defendant GREGORIO PUEBLA sold cocaine to a customer.

(224)   On or about July 16, 2011, defendant JESUS BARRAGAN provided approximately seven grams of methamphetamine to defendant TAMMARRA RIVERA to sell to customers.

(225)   On or about July 16, 2011, through July 17, 2011, defendants JESUS BARRAGAN, ELVIRA ESPARZA and JUANA ARAIZA agreed to coordinate the robbery of a drug dealer, wherein ARAIZA accompanied the drug dealer and provided information to ESPARZA as to the drug dealer's activities and location and ESPARZA then passed that information to BARRAGAN.

(226)   On or about July 16, 2011, through July 17, 2011, based upon information provided by defendants ELVIRA ESPARZA and JUANA ARAIZA, defendant JESUS BARRAGAN directed defendant EDUARDO SANCHEZ and other West Side gang members, some of whom were armed with firearms, to the location of a drug dealer in order to rob him.

55

(227) On or about July 19, 2011, defendant TAMMARRA RIVERA paid defendant JESUS BARRAGAN narcotics proceeds for methamphetamine previously provided by BARRAGAN.

(228) On or about July 19, 2011, defendant JESUS BARRAGAN possessed both a handgun and approximately 10.5 grams of methamphetamine with intent to distribute.

(229) On or about July 18, 2011, through July 19, 2011, defendant JUANA ARAIZA possessed, with intent to distribute, methamphetamine.

(230) On or about July 19, 2011, through July 20, 2011, defendant MIGUEL GRADO directed defendant HECTOR FERNANDEZ to arrange a meeting with defendant OSCAR LARA, the "shot caller" for the Varrio San Marcos gang, to discuss the payment of tax money to the Mexican Mafia.

(231) On or about July 19, 2011, defendant HECTOR FERNANDEZ arranged for defendant OSCAR LARA to meet with defendant MIGUEL GRADO, FERNANDEZ and other Diablos gang members, to discuss the payment of Mexican Mafia taxes.

(232) On or about July 20, 2011, defendant OSCAR LARA met with defendants MIGUEL GRADO and HECTOR FERNANDEZ and other Diablos gang members, wherein LARA advised GRADO that the Varrio San Marcos gang was paying tax money to a Mexican Mafia member from Los Angeles and GRADO advised that

56

the Varrio San Marcos gang would have to provide tax money to defendant RUDY ESPUDO.

(233) On or about July 20, 2011, defendant OSCAR LARA informed an associate that an individual was killed for failing to pay tax money to the Mexican Mafia and that LARA was collecting tax money from multiple individuals and that defendant JEREMIAH FIGUEROA was robbing drug dealers.

(234) On or about July 20, 2011, defendant OSCAR LARA agreed to provide $200 in tax money on behalf of the Varrio San Marcos gang to defendant MIGUEL GRADO on the 25th of each month, which would be collected by LARA on the 13th of each month, in order for GRADO to provide the tax money to defendant RUDY ESPUDO.

(235) On or about July 20, 2011, defendant MIGUEL GRADO contacted defendant TONY GARCIA and requested he advise defendant RUDY ESPUDO that the Varrio San Marcos gang was paying tax money to another Mexican Mafia member out of Los Angeles.

(236) On or about July 26, 2011, defendants RUDY ESPUDO and ANGELINA CHAVEZ-ESPUDO instructed defendants SARAH QUINTANA and CYNTHIA VARELA to deliver heroin to them that evening.

(237) On or about July 26, 2011, defendants SARAH QUINTANA and CYNTHIA VARELA requested defendant FRANCISCO GUTIERREZ obtain heroin as requested by

57

defendants RUDY ESPUDO and ANGELINA CHAVEZ-ESPUDO.

(238)   On or about July 26, 2011, defendant FRANCISCO GUTIERREZ arranged for heroin to be delivered to defendants SARAH QUINTANA and CYNTHIA VARELA, who advised defendant RUDY ESPUDO that the heroin was available.

(239)   On or about July 27, 2011, defendant SARAH QUINTANA met with defendant RUDY ESPUDO and provided him heroin that he had ordered.

(240)   On or about July 31, 2011, defendant CYNTHIA VARELA met with defendant PABLO FRANCO and informed him that defendant FRANCISCO GUTIERREZ had obtained heroin for defendant RUDY ESPUDO.

(241)   On or about July 31, 2011, defendant CYNTHIA VARELA informed defendant PABLO FRANCO that defendant FRANCISCO GUTIERREZ was nearly finished collecting tax money on behalf of the Varrio Fallbrook Locos gang.

(242)   On or about July 31, 2011, defendant PABLO FRANCO informed defendant CYNTHIA VARELA that defendant FRANCISCO GUTIERREZ should be providing FRANCO with $300 of tax money due to the Mexican Mafia, and FRANCO wanted VARELA and defendant SARAH QUINTANA to retain his entire portion.

(243)   On or about August 4, 2011, defendant GUSTAVO BARRON obtained several thousand rounds of stolen ammunition and began providing that ammunition to

58

1    Diablos gang members, including defendant JULIO

2    SOLORZANO.

3    (244) On or about August 4, 2011, defendant TONY GARCIA

4    picked up tax money being held by defendant

5    MARCELINA REYNOSO for defendants RUDY ESPUDO and

6    ANGELINA CHAVEZ-ESPUDO.

7    (245) On or about August 4, 2011, defendant TONY GARCIA

8    met with defendant ELVIRA ESPARZA, who was

9    accompanied by defendant FRANCISCO ZAMORA, to

10   discuss the payment of tax money to the Mexican

11   Mafia by the West Side gang.

12   (246) On or about August 5, 2011, defendant OSCAR LARA

13   agreed to provide methamphetamine to a customer,

14   wherein LARA sent an associate to deliver the

15   requested methamphetamine.

16   (247) On or about August 6, 2011, defendant OSCAR LARA

17   distributed methamphetamine to various customers,

18   wherein LARA directed an associate to pick up

19   payment for methamphetamine previously provided

20   a customer and deliver additional methamphetamine

21   to that same customer.

22   (248) On or about August 6, 2011, defendant JULIO

23   SOLORZANO provided defendant JOSE ARANDA with a

24   controlled substance to distribute to another

25   individual.

26   (249) On or about August 7, 2011, at the request of

27   defendant MIGUEL GRADO, defendant ULICES LOPEZ

28   delivered four ounces of cocaine to GRADO at

59

defendant ENRIQUE TORRES' residence in exchange for $3,400.

(250)   On or about August 7, 2011, defendant ENRIQUE TORRES possessed, with intent to distribute, multiple baggies of marijuana.

(251)   On or about August 8, 2011, defendant GREGORIO PUEBLA and an associate discussed obtaining an ounce of cocaine to split and sell to customers, which PUEBLA and defendant MIGUEL GRADO distributed to various customers.

(252)   On or about August 9, 2011, defendant MIGUEL GRADO quoted defendant GERARDO BARAJAS a price of $3,200 for a quarter pound of methamphetamine.

(253)   On or about August 9, 2011, defendant GUSTAVO BARRON agreed to sell defendant MIGUEL GRADO a quarter pound of marijuana for $825, which BARRON subsequently delivered to GRADO at his residence.

(254)   On or about August 10, 2011, defendant MIGUEL GRADO advised defendant GREGORIO PUEBLA to sell an "eight ball," that is 3.4 grams of cocaine, for $190.

(255)   On or about August 10, 2011, defendant GREGORIO PUEBLA distributed approximately 3.4 grams of cocaine to a customer in exchange for $190.

(256)   On or about August 14, 2011, in furtherance of their negotiations for the sale of a quarter pound of methamphetamine, defendant ULICES LOPEZ

60

agreed to obtain a sample of methamphetamine for defendant MIGUEL GRADO.

(257) On or about August 13, 2011, through August 14, 2011, defendant OSCAR LARA collected tax money on behalf of the Varrio San Marcos gang from an associate.

(258) On or about August 14, 2011, defendant MIGUEL GRADO agreed to sell a controlled substance to a customer and directed the customer to drive to GRADO's residence, where GRADO directed an associate to deliver the controlled substance to the customer.

(259) On or about August 14, 2011, defendant GUSTAVO BARRON sold defendant MIGUEL GRADO a quarter pound of marijuana for $775, in order for GRADO and defendant ENRIQUE TORRES to sell to customers.

(260) On or about August 14, 2011, an associate advised defendant MIGUEL GRADO that he was finished selling marijuana previously provided by GRADO and needed additional marijuana to sell to customers.

(261) On or about August 14, 2011, defendant MIGUEL GRADO provided an ounce of marijuana to an associate, in order for the associate to sell marijuana to customers.

(262) On or about August 14, 2011, defendant RUDY ESPUDO told defendant TONY GARCIA to instruct

61

1   defendant MIGUEL GRADO to provide an additional

2   $500 tax payment, with $300 coming from the

3   Diablos gang and $200 coming from the West Side

4   gang, wherein GARCIA called GRADO and relayed the

5   orders of ESPUDO.

6   (263)   On or about August 14, 2011, defendant MIGUEL

7   GRADO informed defendant TONY GARCIA that he had

8   an additional $250 tax payment from the Diablos

9   gang, as requested by defendant RUDY ESPUDO.

10  (264)   On or about August 14, 2011, defendant ELVIRA

11  ESPARZA informed defendant TONY GARCIA that

12  defendant EDUARDO SANCHEZ believed that the West

13  Side gang was only required to pay $200 tax money

14  each month to defendant RUDY ESPUDO, wherein

15  GARCIA told ESPARZA to inform SANCHEZ that the

16  West Side gang was required to pay $1,000 in tax

17  money each month.

18  (265)   On or about August 14, 2011, defendant MIGUEL

19  GRADO advised defendant GERARDO BARAJAS that

20  defendant RUDY ESPUDO had ordered additional tax

21  money and GRADO did not want to ask defendant

22  HECTOR GARCIA because GARCIA contributed the most

23  money each month toward the tax payment while

24  most Diablos gang members only contributed $100-

25  $200 each month, wherein BARAJAS advised he would

26  speak with defendant ADAN LANDEROS about

27  providing additional funds to pay to ESPUDO.

28

62

(266)   On or about August 15, 2011, defendant RUDY ESPUDO advised that he had given defendants ELVIRA ESPARZA and JESUS BARRAGAN "the cuebrada," that is the authority to collect tax money on behalf of the West Side gang, and acknowledged that the West Side gang had "a new owner," that is, defendant EDUARDO SANCHEZ was the new shot-caller for the West Side gang.

(267)   On or about August 15, 2011, defendant RUDY ESPUDO instructed defendant MIGUEL GRADO to have an associate remove graffiti from a tree near the residence of defendants RUDY ESPUDO and ANGELINA CHAVEZ-ESPUDO, wherein GRADO directed defendant JESSY MORENO to have another associate remove the graffiti.

(268)   On or about August 18, 2011, defendant GUSTAVO BARRON possessed a scale, a rifle, thousands of rounds of ammunition and multiple packages of cocaine with intent to distribute.

(269)   On or about August 19, 2011, defendant GREGORIO PUEBLA distributed approximately 3.4 grams of cocaine to a customer.

(270)   On or about August 20, 2011, defendants JULIO SOLORZANO and JOSE CORNEJO confronted R.T. and demanded to know which gang he claimed to be a member of and R.T. responded that he did not "gang bang," at which point SOLORZANO and CORNEJO, who was armed with a handgun, took by

63

threat and force personal property belonging to R.T. in the presence of R.S. and fled to a vehicle being driven by an associate.

(271)   On or about August 20, 2011, after robbing R.T., defendants JULIO SOLORZANO and JOSE CORNEJO drove by and shot at R.T. and S.V..

(272)   On or about August 20, 2011, defendant ULICES LOPEZ advised defendant MIGUEL GRADO that he had obtained a sample of methamphetamine for him as requested.

(273)   On or about August 23, 2011, defendant GREGORIO PUEBLA explained to another individual who wanted to start selling drugs the requirement to pay tax money to the Mexican Mafia or be assaulted and robbed, that is she would "have to pay taxes . . . it doesn't matter if it's your shit.  You're slinging in the city, anyone slinging in the city has to pay taxes . . . whether you like it or not . . . if you get caught lying, you know, or try to dodge, dodge that kind of shit, you're going to get into some serious shit," that is, the individual would be assaulted and/or robbed.

(274)   On or about August 24, 2011, defendant GREGORIO PUEBLA distributed approximately seven grams of cocaine to a customer.

(275)   On or about August 26, 2011, defendant RUDY ESPUDO directed defendant TONY GARCIA to find out why the Diablos and West Side gangs had failed to

64

1         pay their tax money to the Mexican Mafia, which

2         was due on August 25, 2011.

3   (276)  On or about August 27, 2011, defendant JESSY

4         MORENO requested that defendant MIGUEL GRADO

5         provide him with marijuana to sell to another

6         individual, wherein GRADO advised he had to weigh

7         the marijuana.

8   (277)  On or about August 27, 2011, defendant GREGORIO

9         PUEBLA distributed cocaine to a customer.

10  (278)  On or about August 27, 2011, through August 28,

11        2011, defendants MIGUEL GRADO and ENRIQUE TORRES

12        discussed and agreed to purchase an amount of

13        marijuana to sell to customers.

14  (279)  On or about August 28, 2011, defendants MIGUEL

15        GRADO and ENRIQUE TORRES purchased a quarter

16        pound of marijuana to sell to customers, and

17        GRADO distributed marijuana to various customers,

18        after which GRADO and TORRES discussed purchasing

19        additional amounts of marijuana.

20  (280)  On or about August 29, 2011, defendant RUDY

21        ESPUDO directed defendant TONY GARCIA to have

22        defendant MIGUEL GRADO deliver the Diablos tax

23        money to defendant MARCELINA REYNOSO.

24  (281)  On or about August 29, 2011, defendant MIGUEL

25        GRADO delivered "a whole burnt CD," that is

26        $1,000 in tax money, to defendant MARCELINA

27        REYNOSO, and promised to provide another $1,000

28        later that evening or the following day.

(282)   On or about August 30, 2011, defendant GERARDO BARAJAS provided defendant MIGUEL GRADO with $100 toward the Diablos gang's tax money due the Mexican Mafia.

(283)   On or about August 30, 2011, defendant MIGUEL GRADO requested tax money from defendant ULICES LOPEZ, who agreed to provide $200 tax money along with a free one gram sample of methamphetamine previously requested by GRADO, wherein another associate was directed by GRADO to pick up the $200 tax payment and sample of methamphetamine from LOPEZ.

(284)   On or about August 30, 2011, defendant MIGUEL GRADO delivered an additional $500 tax money for the Mexican Mafia on behalf of the Diablos gang to defendant MARCELINA REYNOSO.

(285)   On or about August 30, 2011, defendant MARCELINA REYNOSO advised defendant TONY GARCIA that the Diablos gang had delivered a $500 tax payment for defendants RUDY ESPUDO and ANGELINA CHAVEZ-ESPUDO.

(286)   On or about August 30, 2011, through August 31, 2011, defendant EDUARDO SANCHEZ requested an extension for the West Side gang to pay the required tax money to the Mexican Mafia.

(287)   On or about August 31, 2011, defendant ARTHUR GARCIA advised defendant MIGUEL GRADO that defendant EDUARDO SANCHEZ had collected nearly

the entire tax payment due from the West Side gang.

(288)   On or about August 31, 2011, defendant ARTHUR GARCIA advised that a drug dealer was avoiding the payment of tax money and defendant MIGUEL GRADO instructed him to "just go over there . . . whatever, fuck him," that is, assault and rob the drug dealer.

(289)   On or about September 1, 2011, defendant JOSE ARANDA provided money to defendant MIGUEL GRADO towards the Diablos gang's tax money due the Mexican Mafia.

(290)   On or about September 2, 2011, defendants ARTHUR GARCIA and MIGUEL GRADO discussed the taxing of an individual, who was not a Diablos gang member, that had robbed a drug dealer, wherein GARCIA told the individual "he's gotta kick in something . . . he has to.  Mandatory . . . he has to break bread with the homie" and GRADO advised, "Everybody fool.  If anybody says, anybody try to act stupid, let them have it," that is, the individual had to pay tax payment to the Mexican Mafia or be assaulted and robbed.

(291)   On or about September 2, 2011, defendant ARTHUR GARCIA and an associate advised defendant MIGUEL GRADO that they had an individual "hemmed up" who had robbed a drug dealer and failed to provide a tax payment to the Mexican Mafia from the robbery

proceeds, wherein GRADO directed GARCIA to rob the individual, that is "take whatever he wants."

(292)   On or about September 2, 2011, an associate advised defendant MIGUEL GRADO that he was beginning to distribute controlled substances and would provide tax money for the Diablos gang.

(293)   On or about September 2, 2011, defendant ARTHUR GARCIA advised defendant MIGUEL GRADO that defendant EDUARDO SANCHEZ had $840 in tax money on behalf of the West Side gang, wherein GRADO reiterated that the West Side gang was responsible for a $1,000 tax payment each month to the Mexican Mafia.

(294)   On or about September 3, 2011, defendant ARTHUR GARCIA advised defendant MIGUEL GRADO that he had received the entire $1,000 tax payment on behalf of the West Side gang, which GARCIA subsequently provided to GRADO.

(295)   On or about September 11, 2011, defendant JESSY MORENO told defendant MIGUEL GRADO, "the abuela just came over and wants to hook up with the white bitch, Christina" within the hour, that is, defendant RUDY ESPUDO wanted to be provided methamphetamine within the hour.

(296)   On or about September 11, 2011, defendants MIGUEL GRADO and JOSE ARANDA agreed to provide three grams of methamphetamine to "the homies' uncle," that is defendant RUDY ESPUDO, for free, and

1                 GRADO instructed defendant JESSY MORENO to

2                 deliver the methamphetamine to ESPUDO.

3     (297)    On or about September 11, 2011, defendant JOSE

4                 ARANDA provided methamphetamine to defendant

5                 JESSY MORENO, which MORENO delivered to defendant

6                 RUDY ESPUDO.

7     (298)    On or about September 11, 2011, defendant EDUARDO

8                 SANCHEZ advised defendant MIGUEL GRADO that he

9                 would have $150 in tax money on behalf of the

10                West Side gang to be provided to defendant RUDY

11                ESPUDO, wherein both SANCHEZ and GRADO discussed

12                the need to assault and/or rob defendant ELVIRA

13                ESPARZA for failing to provide tax money.

14     (299)    On or about September 12, 2011, defendant EDUARDO

15                SANCHEZ told defendant MIGUEL GRADO, "I got the

16                $150 I sold that tire for . . . Tammy got me,"

17                that is defendant TAMMARRA RIVERA provided $150

18                in tax money to the West Side gang.

19     (300)    On or about September 12, 2011, defendant MIGUEL

20                GRADO received a $150 tax payment from defendant

21                EDUARDO SANCHEZ on behalf of the West Side gang,

22                wherein GRADO instructed defendant JESSY MORENO

23                to tell defendant RUDY ESPUDO that the West Side

24                gang had made a tax payment.

25     (301)    On or about September 12, 2011, defendant GERARDO

26                BARAJAS requested both a half ounce of cocaine

27                and a half ounce of marijuana from defendant

28                MIGUEL GRADO to sell to customers, wherein GRADO

subsequently provided both the cocaine and marijuana to BARAJAS.

(302) On or about September 12, 2011, defendant OSCAR LARA agreed to provide an ounce of methamphetamine to a customer, wherein after LARA met with a source of supply, LARA subsequently sold an ounce of methamphetamine to the customer.

(303) On or about September 13, 2011, defendant JOSE ARANDA requested an ounce of methamphetamine from defendant MIGUEL GRADO, wherein GRADO agreed to provide the ounce of methamphetamine for $750, which GRADO left for ARANDA with defendant HECTOR GARCIA at defendant JESSY MORENO's residence.

(304) On or about September 14, 2011, defendant JESSY MORENO advised defendant MIGUEL GRADO that "the grandfather just came" and wanted "another heina . . . a fine bitch" by tomorrow, that is, RUDY ESPUDO wanted additional methamphetamine that was of good quality by the following day.

(305) On or about September 14, 2011, defendant EDUARDO SANCHEZ agreed to provide methamphetamine to an associate, who advised she was going to sell the methamphetamine to customers, wherein SANCHEZ subsequently provided methamphetamine to the associate, which the associate later indicated was "bunk," that is, poor quality methamphetamine.

70

(306)   On or about September 14, 2011, defendants MIGUEL GRADO and EDUARDO SANCHEZ discussed making defendant ELVIRA ESPARZA pay the required tax money due from her each month.

(307)   On or about September 14, 2011, defendant ELVIRA ESPARZA advised both defendants MIGUEL GRADO and EDUARDO SANCHEZ that she was not presently dealing drugs and would not be paying the required tax for September.

(308)   On or about September 14, 2011, defendant MIGUEL GRADO advised defendant TONY GARCIA that defendant ELVIRA ESPARZA indicated she was not presently selling drugs and was refusing to pay tax to the Mexican Mafia, wherein GRADO wanted direction from GARCIA and defendant RUDY ESPUDO as to how to proceed regarding ESPARZA.

(309)   On or about September 14, 2011, regarding defendant ELVIRA ESPARZA's refusal to pay tax money because she wasn't presently dealing drugs, defendant TONY GARCIA advised defendant MIGUEL GRADO, "she rented that room, you know what I mean. She rented it. She's obligated for the month," that is ESPARZA had to pay tax to the Mexican Mafia.

(310)   On or about September 14, 2011, defendant EDUARDO SANCHEZ collected $200 in tax money from defendant TAMMARRA RIVERA, which SANCHEZ subsequently delivered to defendant MIGUEL GRADO.

71

(311)  On or about September 15, 2011, defendant TONY GARCIA informed defendant MIGUEL GRADO that defendant ELVIRA ESPARZA was "obligated to pay rent by law," that is pay tax money to the Mexican Mafia.

(312)  On or about September 15, 2011, an associate informed defendant EDUARDO SANCHEZ that an individual had fled from the associate without paying for drugs provided, a portion of the proceeds that would be payable as Mexican Mafia tax to the West Side gang.

(313)  On or about September 16, 2011, defendant OSCAR LARA agreed to provide a half ounce of methamphetamine to a customer, wherein after LARA met with a source of supply, LARA subsequently sold the methamphetamine to the customer in exchange for $550.

(314)  On or about September 16, 2011, defendants EDUARDO SANCHEZ and JUANA ARAIZA agreed to distribute methamphetamine to customers, wherein ARAIZA delivered methamphetamine to a customer at the direction of SANCHEZ.

(315)  On or about September 17, 2011, defendant EDUARDO SANCHEZ agreed to accompany an associate to assault and rob an individual who fled without paying for drugs provided, a portion of the proceeds that would be payable as Mexican Mafia tax to the West Side gang.

72

(316)   On or about September 17, 2011, defendant EDUARDO SANCHEZ armed himself with a handgun and drove to meet an associate in order to rob an individual who fled without paying for drugs provided, a portion of the proceeds that would be payable as Mexican Mafia tax to the West Side gang.

(317)   In or about September 2011, defendants RUDY ESPUDO and ANGELINA CHAVEZ-ESPUDO directed an associate to collect and deliver $1,000 in Mexican Mafia tax money on behalf of the West Side gang each month to ESPUDO and CHAVEZ-ESPUDO, and advised that defendant TAMMARRA RIVERA was paying tax each month.

(318)   On or about September 20, 2011, through September 21, 2011, defendant OSCAR LARA collected $200 in tax payment, which was less than the expected amount, from an individual who advised LARA, "It's hard times right now," that is drug sales were down.

(319)   On or about September 21, 2011, defendant CYNTHIA VARELA advised defendant ANGELINA CHAVEZ-ESPUDO, "I have some pictures . . . five," that is, VARELA had $500 in tax money on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang for CHAVEZ-ESPUDO and defendant RUDY ESPUDO, and that another $500 was forthcoming.

(320)   On or about September 21, 2011, defendant ANGELINA CHAVEZ-ESPUDO told defendant RUDY ESPUDO

73

that the Varrio Fallbrook Locos gang had $500 in tax money with another $500 forthcoming and it was agreed that CHAVEZ-ESPUDO would collect the money.

(321)   On or about September 22, 2011, defendant CYNTHIA VARELA delivered $500 in tax money to defendant ANGELINA CHAVEZ-ESPUDO on behalf of defendant PABLO FRANCO and the Varrio Fallbrook Locos gang.

(322)   On or about September 22, 2011, defendant MIGUEL GRADO advised defendant TONY GARCIA that GRADO was working on collecting the "five magazines" requested by defendant RUDY ESPUDO, that is $500 in tax money, and currently had $200.

(323)   On or about September 22, 2011, defendant TONY GARCIA advised defendant RUDY ESPUDO that the Diablos gang had $200 of the requested $500 tax money.

(324)   On or about September 22, 2011, defendant MIGUEL GRADO delivered $500 tax money to defendant MARCELINA REYNOSO at the direction of defendant TONY GARCIA.

(325)   On or about September 23, 2011, defendant OSCAR LARA discussed an associate having met "Big Crazy . . . from Escondido," that is defendant RUDY ESPUDO, wherein ESPUDO advised the associate he was "a big homie," that is a Mexican Mafia member, and LARA acknowledged his belief that

74

ESPUDO was "a senor . . . a carnal," that is, a Mexican Mafia member.

(326) On or about September 23, 2011, defendant RUDY ESPUDO advised an associate that he wanted "homies not to be tagging in Escondido or San Marcos and shit," that is gang members should not put up graffiti.

(327) On or about September 23, 2011, defendant OSCAR LARA agreed to provide a half ounce of methamphetamine to a customer, wherein after LARA met with a source of supply, LARA subsequently sold methamphetamine to the customer.

(328) On or about September 25, 2011, defendant CYNTHIA VARELA advised defendant PABLO FRANCO that she had met with defendant ANGELINA CHAVEZ-ESPUDO and paid tax money from the Varrio Fallbrook Locos gang.

(329) On or about September 27, 2011, defendant RUDY ESPUDO directed defendant TONY GARCIA to contact defendant MIGUEL GRADO and have GRADO provide ESPUDO with methamphetamine, wherein GARCIA advised that tax money was waiting at the residence of defendant MARCELINA REYNOSO.

(330) On or about September 27, 2011, defendant RUDY ESPUDO met with defendant MARCELINA REYNOSO, who provided ESPUDO with the tax money that she was holding on his behalf.

(331)   On or about September 27, 2011, defendant TONY GARCIA directed defendant MIGUEL GRADO to provide methamphetamine to defendant RUDY ESPUDO, wherein GRADO subsequently delivered methamphetamine to ESPUDO at his residence.

(332)   On or about September 29, 2011, defendant CYNTHIA VARELA communicated to defendants RUDY ESPUDO and ANGELINA CHAVEZ-ESPUDO that defendant PABLO FRANCO was aware that tax money due from the Varrio Fallbrook Locos gang was behind and he was going to ensure that tax money be paid soon.

(333)   On or about September 29, 2011, defendants ANGELINA CHAVEZ-ESPUDO and RUDY ESPUDO instructed defendant CYNTHIA VARELA to contact CHAVEZ-ESPUDO when VARELA had the "pictures;" that is, Mexican Mafia tax money, to deliver on behalf of the Varrio Fallbrook Locos gang and CHAVEZ-ESPUDO would collect the money.

(334)   On or about October 1, 2011, defendant MIGUEL GRADO advised defendant TONY GARCIA that he had the tax money due from the Diablos gang, wherein GARCIA instructed GRADO to deliver the tax money to defendant MARCELINA REYNOSO, which GRADO did.

(335)   On or about October 2, 2011, defendant RUDY ESPUDO instructed defendant TONY GARCIA to both pick up the tax money being held by defendant MARCELINA REYNOSO and have defendant MIGUEL GRADO provide ESPUDO with methamphetamine.

76

(336)   On or about October 5, 2011, defendant MIGUEL GRADO advised defendant TONY GARCIA that he had methamphetamine for defendant RUDY ESPUDO as requested, which GRADO delivered to ESPUDO and defendant ANGELINA CHAVEZ-ESPUDO at their residence.

(337)   On or about October 14, 2011, defendant JOSE ARANDA requested an associate obtain methamphetamine for ARANDA to sell to customers, wherein ARANDA provided the associate money to purchase the methamphetamine.

(338)   On or about October 14, 2011, an associate obtained methamphetamine from a drug dealer for defendant JOSE ARANDA, which was less than the amount the drug dealer had agreed to provide.

(339)   On or about October 14, 2011, defendant JOSE ARANDA refused to accept the "shorted" amount of methamphetamine and instructed the associate to "make it right," that is either obtain the full amount of methamphetamine or a refund of the money provided to the drug dealer.

(340)   On or about October 14, 2011, through October 15, 2011, an associate was advised that defendant RUDY ESPUDO knew that a drug dealer had "shorted" defendant JOSE ARANDA, and defendants ARANDA, MIGUEL GRADO and HECTOR GARCIA directed the associate to obtain either a refund of the money or the full amount of methamphetamine.

(341)   On or about October 14, 2011, through October 15, 2011, defendant JOSE ARANDA demanded that only a refund of the money provided the drug dealer be obtained.

(342)   On or about October 15, 2011, a drug dealer provided the full amount of methamphetamine ordered by defendant JOSE ARANDA plus an additional amount to an associate, who then delivered the methamphetamine to defendant RUDY ESPUDO.

(343)   On or about October 15, 2011, defendants JOSE ARANDA and MIGUEL GRADO demanded to meet with a drug dealer that had "shorted" ARANDA in a methamphetamine transaction and defendant RUDY ESPUDO ordered the drug dealer to meet with ARANDA and GRADO.

(344)   On or about October 15, 2011, defendants JOSE ARANDA and MIGUEL GRADO confronted a drug dealer that had "shorted" ARANDA in a methamphetamine transaction, wherein ARANDA stabbed the drug dealer in the face and ARANDA and GRADO then shot the drug dealer.

(345)   On or about October 19, 2011, defendant HECTOR GARCIA possessed, with intent to distribute, approximately two ounces of methamphetamine and a loaded handgun.

78

(346)   On or about October 20, 2011, defendant ULICES LOPEZ possessed, with intent to distribute, approximately 7.49 grams of cocaine.

(347)   On or about October 21, 2011, defendant ULICES LOPEZ possessed, with intent to distribute, approximately 69 grams of cocaine and a scale.

(348)   On or about October 24, 2011, defendant ANGELINA CHAVEZ-ESPUDO directed defendant MIGUEL GRADO to provide tax money of at least $1,700, in order for CHAVEZ-ESPUDO to pay her mortgage, which GRADO subsequently provided.

(349)   On or about October 25, 2011, defendant JUANA ARAIZA sold methamphetamine to multiple customers.

(350)   On or about October 28, 2011, defendant JUANA ARAIZA possessed and agreed to sell seven grams of methamphetamine for $300.

(351)   In or about November 2011, defendants MIGUEL GRADO and GERARDO BARAJAS informed G.S. that he would be required to pay $800 per month in tax to the Mexican Mafia, which would be collected by the Diablos gang.

(352)   On or about November 16, 2011, defendant RUDY ESPUDO directed defendant JANETTE HERNANDEZ and others to rob G.S. for failing to pay tax to the Mexican Mafia, which HERNANDEZ agreed to accomplish.

1      (353)   On or about November 16, 2011, defendant JANETTE

2              HERNANDEZ and others, acting upon orders of

3              defendant RUDY ESPUDO, entered the residence of

4              G.S. and took from his residence multiple items

5              of personal property, including televisions,

6              speakers and currency, while G.S. was present.

7      (354)   On or about November 18, 2011, defendants MIGUEL

8              GRADO and GERARDO BARAJAS communicated to

9              defendants JANETTE HERNANDEZ and RUDY ESPUDO that

10             G.S. had been instructed to begin paying tax

11             money to the Mexican Mafia through the Diablos.

12

13     THE GRAND JURY FURTHER ALLEGES THAT:

14     18.  Beginning on a date unknown to the Grand Jury, but at least

15 since August 2010, and continuing through on or about January 2012,

16 within the Southern District of California and elsewhere, defendants

17 RUDY ESPUDO, aka Crazy, ANGELINA CHAVEZ-ESPUDO, aka Angel, aka Senora,

18 MIGUEL GRADO, aka Kieto, aka Kathy, JESUS BARRAGAN, aka Chito, OSCAR

19 LARA, aka Little Troubles, ADAN LANDEROS, aka Lucky, EDUARDO SANCHEZ,

20 aka Ghetto, aka Eric, JOSE ARANDA, aka Vicious, JULIO SOLORZANO, aka

21 Mowgli, GERARDO BARAJAS, aka Knuckles, ENRIQUE TORRES, aka Clumsy, aka

22 Klumsy, HECTOR GARCIA, aka Studders, aka Muffin, JOSE ORTEGA, aka

23 Temper, ARMANDO BARRAGAN, aka Bart, ELVIRA ESPARZA, aka Vida, DANIEL

24 NIETO, aka Malo, FERNANDO CARAPIA, aka Youngster, JUANA ARAIZA, ULICES

25 LOPEZ, aka Tony, TAMMARRA RIVERA, aka Tammarra Basulto, aka Tammy and

26 TONY GARCIA, aka Whopper, and others known and unknown to the Grand

27 Jury, conspired and agreed with each other to knowingly and

28 intentionally distribute more than 50 grams of methamphetamine

1  (actual) or more than 500 grams of a mixture containing a detectable

2  amount of methamphetamine, a Schedule II Controlled Substance; in

3  violation of Title 21, United States Code, Sections 841(a)(1) and

4  841(b)(1)(A)(viii).

5  All in violation of Title 18, United States Code, Section 1962(d).

6  ### Criminal Forfeiture Allegations

7  ### RICO Forfeiture - 18 U.S.C. §1963

8  19.  The allegations contained in Count 1 are realleged and by

9  its reference fully incorporated herein for the purpose of alleging

10  forfeiture to the United States of America pursuant to the provisions

11  of Title 18, United States Code, Section 1963.

12  20.  Upon conviction of the offense set forth in Count 1,

13  defendants RUDY ESPUDO and ANGELINA CHAVEZ-ESPUDO, shall forfeit to

14  the United States of America, pursuant to Title 18, United States

15  Code, Section 1963(a):

16  a.  any interests acquired or maintained in violation of

17  Section 1962, which interests are subject to forfeiture to the United

18  States pursuant to Title 18, United States Code, Section 1963(a)(1);

19  b.  any interest in, security of, claims against, and

20  property and contractual rights which afford a source of influence

21  over, the Enterprise described above which the defendants established,

22  operated, controlled, conducted, and participated in the conduct of,

23  in violation of Title 18, United States Code, Section 1962, which

24  interests, securities, claims, and rights are subject to forfeiture

25  to the United States pursuant to Title 18, United States Code,

26  Section 1963(a)(2); and

27  c.  any property constituting and derived from proceeds

28  obtained, directly and indirectly, from the racketeering activity

81

described in this Indictment, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

21. The United States alleges that the following specific properties are subject to forfeiture to the United States of America upon the defendants convictions on Count 1 of the Indictment, pursuant to Paragraph 20 above and pursuant to Title 18, United States Code, Section 1963(a):

(a) One 1976 Cadillac, California License 309PJB, VIN 6D47S6Q210814; and

(b) One residential real property bearing street address 2416 Ashford Glen, Escondido, California, 92027, APN 231-721-04, legally described as:

Lot 60 of Escondido Tract No. 375-8, in the City of Escondido, County of San Diego, State of California, according to map thereof No. 9927 filed in the office of the County Recorder of San Diego County, December 10, 1980.

22. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

1   it is the intent of the United States, pursuant to Title 18, United

2   States Code, Section 1963(m), to seek forfeiture of any other property

3   of said defendants up to the value of the above forfeitable property.

4   All pursuant to Title 18, United States Code, Section 1963.

5          DATED: January 19, 2012.

6                                                    A TRUE BILL:

7

8                                                    _____
                                                     Foreperson

9   LAURA E. DUFFY
    United States Attorney

10

11

    By:_____
12      FRED SHEPPARD
        Assistant U.S. Attorney
13

14  By:_____
        TARA K. McGRATH
15      Assistant U.S. Attorney

16

17

18

19

20

21

22

23

24

25

26

27

28

83